UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LM GENERAL INSURANCE COMPANY, AMERICAN STATES INSURANCE COMPANY, LIBERTY MUTUAL PERSONAL INSURANCE COMPANY, AND LM INSURANCE CORPORATION,<br><br>      Plaintiffs,<br><br>      vs.<br><br>IN & OUT RX INC., TOTAL MED RX INC., NEW LOTS RX PLUS CORP., BORIK NISANOV, JACOB ABDURAKHMANOV, MICHAEL MOSHEYEV, AND JOSHUA KANDINOV,<br><br>      Defendants. | C.A. No.: |

## PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, LM General Insurance Company, American States Insurance Company, Liberty Mutual Personal Insurance Company, and LM Insurance Corporation (collectively, "Liberty Mutual" and/or "plaintiffs"), by their attorneys, King, Tilden, McEttrick & Brink, P.C., allege as follows:

I.    **INTRODUCTION**

1.    Defendants, Borik Nisanov ("Nisanov"), Jacob Abdurakhmanov ("Abdurakhmanov"), Michael Mosheyev ("Mosheyev"), and Joshua Kandinov ("Kandinov") devised and implemented a fraudulent scheme to unlawfully operate pharmacies In & Out Rx Inc. ("In & Out Rx"), Total Med Rx Inc. ("Total Med Rx"), and New Lots Rx Plus Corp. ("New Lots Rx") (collectively, "Pharmacy Defendants") in violation of New York law.

1

2.      The Defendants[1] damaged Liberty Mutual by submitting fraudulent claims through the Pharmacy Defendants seeking payment for pain-relief products, including diclofenac sodium 2% solution,[2] lidocaine 5% ointment, and cyclobenzaprine ("Pain Products").

3.      The Defendants submitted the Pharmacy Defendants' claims to Liberty Mutual under New York's No-Fault laws, which provide insurance coverage to persons ("claimants") involved in automobile accidents.

4.      New York was an ideal venue for this scheme because claimants are eligible for at least $50,000.00 in coverage for necessary medical and pharmacy expenses, and because claimants can assign their No-Fault benefits to pharmacies.

5.      Pharmacies can seek payment directly from the claimant's insurer, which removes claimants from the billing process and keeps them ignorant about the cost of their care.

6.      Pharmacies are not eligible to collect No-Fault payments if they fail to comply with applicable New York state licensing laws.

7.      Pharmacies are prohibited from billing for unnecessary drugs under New York's No-Fault laws.

8.      Here, the Pharmacy Defendants billed Liberty Mutual for Pain Products that were medically unnecessary—the claimants did not need the Pain Products, and the drugs were ineffective to treat musculoskeletal conditions.

9.      The Pain Products were ordered for claimants as part of a fraudulent pre-determined treatment protocol that required prescriptions for all claimants regardless of medical need.

---

[1] The term "Defendants" means Nisanov, Abdurakhmanov, Mosheyev, Kandinov, In & Out Rx, Total Med Rx, and New Lots Rx, collectively.
[2] Diclofenac Sodium 2% Solution is also referred to by the brand name "Pennsaid."

10.    The Defendants knew that the Pain Products billed to Liberty Mutual by the Pharmacy Defendants were medically unnecessary and ineffective.

11.    Pharmacies must also comply with a specific schedule of fees when submitting No-Fault claims because pharmacy claims are paid using rates that are calculated based on the drug's average wholesale price—a rate that is often many times greater than a drug's actual acquisition cost.

12.    The Defendants secured a steady stream of prescriptions for these drugs because of the unlawful arrangement made between the Pharmacy Defendants and John J. McGee, D.O. ("McGee")—the sole referrer—which is against New York law.

13.    Numerous prescriptions were generated by the McGee clinics located at (1) 2558 Holland Avenue, Bronx, NY (South Bronx Medical Rehabilitation P.C.), (2) 1100 Pelham Parkway, Bronx, NY (South Bronx Medical Rehabilitation P.C.), (3) 1894 Eastchester Road, Bronx, NY (South Bronx Medical Rehabilitation P.C.), (4) 2386 Jerome Avenue, Bronx, NY (South Bronx Medical Rehabilitation P.C.), (5) 1200 Waters Place, Bronx, NY (Beach Medical Rehabilitation P.C.), (6) 700 Utica Avenue, Brooklyn, NY (South Bronx Medical Rehabilitation P.C.), and (7) 384 East 149th Street, Bronx, NY (Beach Medical Rehabilitation P.C.), that specifically catered to No-Fault patients.

14.    Several of McGee's clinics have been implicated in fraud schemes in other actions filed in this District.[3]

---

[3] *See Allstate Ins. Co. v. Jeffrey S. Rauch, D.C. d/b/a Rego Park Healthcare Alliance,* No. 2:22-cv-02424-JMA-LGD (E.D.N.Y.); *Gov. Empls. Ins. Co., v. McGee, D.O.,* No. 1:23-cv-07753-PKC-PK (E.D.N.Y.); *Allstate Ins. Co., v. Ilyaich,* No. 1:13-cv-05464-NG-LB (E.D.N.Y.); and *State Farm Mut. Auto. Ins. Co. v. McGee,* No. 1:10-cv-03848-PKC-RML (E.D.N.Y.).

15.     The vast majority of prescriptions were unlawfully steered by McGee through his clinics—Beach Medical Rehabilitation P.C. ("Beach Medical") and South Bronx Medical Rehabilitation P.C. ("South Bronx Medical")—to the Pharmacy Defendants so the Defendants could bill Liberty Mutual.

16.     The Defendants enriched themselves at the expense of patients. The scheme generated vast numbers of prescriptions for the Pharmacy Defendants, but the ordering and dispensing of unnecessary drugs placed claimants at risk. Pain Products were prescribed and dispensed indiscriminately, without regard for actual medical need.

17.     Overall, the Pharmacy Defendants operated in violation of New York law by dispensing and billing for drugs and medications that were prescribed pursuant to unlawful referral arrangements, were medically unnecessary, and were excessively charged.

18.     The Defendants knew that the Pharmacy Defendants were ineligible to collect No-Fault payments, yet they still created statutory prescribed claim forms (i.e., NF-3 forms and CMS-1500 forms), which falsely certified the Pharmacy Defendants' eligibility to collect No-Fault payments under New York law.

19.     Liberty Mutual reasonably relied on the facial validity of the records and bills mailed by the Pharmacy Defendants—and the representations contained therein—when making payments on the Pharmacy Defendants' No-Fault claims.

20.     The Defendants knew that the Pharmacy Defendants' No-Fault claims were false and fraudulent because the bills and documents submitted to Liberty Mutual in support of the claims misrepresented or omitted material facts about the Pharmacy Defendants' eligibility to be paid under New York's No-Fault laws.

21.     The success of the Defendants' scheme to defraud relied on the transmission to Liberty Mutual, through the U.S. Mail, of invoices, bills, and other No-Fault claim documents warranting the Pharmacy Defendants' eligibility to collect No-Fault payments under New York law.

22.     All of the acts and omissions of the Defendants described throughout this Complaint were undertaken intentionally.

23.     Liberty Mutual estimates that the Defendants purposely submitted to Liberty Mutual hundreds of bills on behalf of the Pharmacy Defendants knowing that none of the bills were lawfully compensable under prevailing New York law relative to No-Fault insurance coverage and reimbursement eligibility.

24.     By this Complaint, Liberty Mutual brings this action against the Defendants for: (a) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq*.; (b) common-law fraud; and (c) unjust enrichment.

25.     This action seeks actual damages in excess of $69,400.73, which represent No-Fault payments that Liberty Mutual was wrongfully induced to make to the Pharmacy Defendants during the course of this scheme.

26.     Liberty Mutual also seeks a declaration pursuant to 28 U.S.C. § 2201 that it is not legally obligated to make any further payments to the Pharmacy Defendants (or their agents) in connection with any No-Fault claims submitted to Liberty Mutual.

## II.     PARTIES

### A.     PLAINTIFFS

27.     LM Insurance Corporation and LM General Insurance Company are companies duly organized and existing under the laws of the State of Illinois with their principal place of

business in Boston, Massachusetts. LM Insurance Corporation and LM General Insurance Company are authorized to conduct business in the State of New York.

28.    American States Insurance Company is duly organized and existing under the laws of the State of Indiana with its principal place of business in Boston, Massachusetts. American States Insurance Company is authorized to conduct business in the State of New York.

29.    Liberty Mutual Personal Insurance Company is duly organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business in Boston, Massachusetts. Liberty Mutual Personal Insurance Company is authorized to conduct business in the State of New York.

B.    DEFENDANTS

1.    **In & Out Rx Inc.**

30.    In & Out Rx is a corporation organized under the laws of the State of New York.

31.    In & Out Rx became a registered pharmacy in New York on October 18, 2023.

32.    In & Out Rx is owned and controlled by Nisanov.

33.    In & Out Rx's principal place of business is 359 Central Avenue Rear, Lawrence, NY 11559.

34.    In & Out Rx's activities affect interstate commerce.

35.    Nisanov, In & Out Rx, and unknown others participated in the operation and management of the Beach Medical and South Bronx Medical enterprises during the relevant period.

36.    Nisanov and In & Out Rx involved McGee to make false and fraudulent referrals for Pain Products in violation of New York law.

37.    In & Out Rx billed for fraudulent pharmacy services in connection with Liberty Mutual claimants.

38.    In & Out Rx dispensed medically unnecessary Pain Products without regard for patient care and in disregard of its duties under New York law.

39.    In & Out Rx's bills are fraudulent because the pharmacy services were unnecessary and prescribed pursuant to a pre-determined treatment protocol designed to maximize the Defendants' profits at the expense of patient safety and well-being.

40.    Accordingly, In & Out Rx was never eligible to collect No-Fault payments from Liberty Mutual under N.Y. Ins. Law § 5102.

**2.    Total Med Rx Inc.**

41.    Total Med Rx is a corporation organized under the laws of the State of New York.

42.    Total Med Rx became a registered pharmacy in New York on August 2, 2023.

43.    Total Med Rx is owned and controlled by Abdurakhmanov and Mosheyev.

44.    Total Med Rx's principal place of business is 214-85 Jamaica Avenue, Queens Village, NY 11428.

45.    Total Med Rx's activities affect interstate commerce.

46.    Abdurakhmanov, Mosheyev, Total Med Rx, and unknown others participated in the operation and management of the South Bronx Medical enterprises during the relevant period.

47.    Abdurakhmanov, Mosheyev, and Total Med Rx involved McGee to make false and fraudulent referrals for Pain Products in violation of New York law.

48.    Total Med Rx billed for fraudulent pharmacy services in connection with Liberty Mutual claimants.

49.    Total Med Rx dispensed medically unnecessary Pain Products without regard for patient care and in disregard of its duties under New York law.

50.    Total Med Rx's bills are fraudulent because the pharmacy services were unnecessary and prescribed pursuant to a pre-determined treatment protocol designed to maximize the Defendants' profits at the expense of patient safety and well-being.

51.    Accordingly, Total Med Rx was never eligible to collect No-Fault payments from Liberty Mutual under N.Y. Ins. Law § 5102.

### 3.    New Lots Rx Plus Corp.

52.    New Lots Rx is a corporation organized under the laws of the State of New York.

53.    New Lots Rx became a registered pharmacy in New York on February 28, 2024.

54.    New Lots Rx is owned and controlled by Kandinov.

55.    New Lots Rx's principal place of business is 431 New Lots Avenue, Brooklyn, NY 11207.

56.    New Lots Rx's activities affect interstate commerce.

57.    Kandinov, New Lots Rx, and unknown others participated in the operation and management of the South Bronx Medical enterprises during the relevant period.

58.    Kandinov and New Lots Rx involved McGee to make false and fraudulent referrals for Pain Products in violation of New York law.

59.    New Lots Rx billed for fraudulent pharmacy services in connection with Liberty Mutual claimants.

60.    New Lots Rx dispensed medically unnecessary Pain Products without regard for patient care and in disregard of its duties under New York law.

61.    New Lots Rx's bills are fraudulent because the pharmacy services were unnecessary and prescribed pursuant to a pre-determined treatment protocol designed to maximize the Defendants' profits at the expense of patient safety and well-being.

62.    Accordingly, New Lots Rx was never eligible to collect No-Fault payments from Liberty Mutual under N.Y. Ins. Law § 5102.

### 4.    Borik Nisanov

63.    Nisanov resides in and is a citizen of the State of New York.

64.    Nisanov has never been a licensed pharmacist authorized to practice pharmacy in the State of New York.

65.    Nisanov nominally owns In & Out Rx.

66.    Nisanov and unknown others participated in the operation and management of the Beach Medical and South Bronx Medical enterprises during the relevant period, and is therefore responsible for the fraudulent pharmacy services billed in connection with Liberty Mutual claimants at issue in this Complaint.

### 5.    Jacob Abdurakhmanov

67.    Abdurakhmanov resides in and is a citizen of the State of New York.

68.    Abdurakhmanov has never been a licensed pharmacist authorized to practice pharmacy in the State of New York.

69.    Abdurakhmanov and Mosheyev nominally own Total Med Rx.

70.    Abdurakhmanov, Mosheyev, and unknown others participated in the operation and management of the South Bronx Medical enterprise during the relevant period, and is therefore responsible for the fraudulent pharmacy services billed in connection with Liberty Mutual claimants at issue in this Complaint.

    **6.**    **Michael Mosheyev**

71.    Mosheyev resides in and is a citizen of the State of New York.

72.    Mosheyev has never been a licensed pharmacist authorized to practice pharmacy in the State of New York.

73.    Mosheyev and Abdurakhmanov nominally own Total Med Rx.

74.    Mosheyev, Abdurakhmanov, and unknown others participated in the operation and management of the South Bronx Medical enterprise during the relevant period, and is therefore responsible for the fraudulent pharmacy services billed in connection with Liberty Mutual claimants at issue in this Complaint.

    **7.**    **Joshua Kandinov**

75.    Kandinov resides in and is a citizen of the State of New York.

76.    Kandinov has never been a licensed pharmacist authorized to practice pharmacy in the State of New York.

77.    Kandinov nominally owns New Lots Rx.

78.    Kandinov and unknown others participated in the operation and management of the South Bronx Medical enterprise during the relevant period, and is therefore responsible for the fraudulent pharmacy services billed in connection with Liberty Mutual claimants at issue in this Complaint.

## III.   **JURISDICTION AND VENUE**

79.    Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. § 1331.

80.    Supplemental jurisdiction over the Plaintiffs' state law claims is proper under 28 U.S.C. § 1367.

81.    Venue is proper under 28 U.SC. § 1391(b)(2) whereas the vast majority of the acts known to Liberty Mutual alleged herein were carried out within the Eastern District of New York.

82.    At all relevant times, the Defendants have engaged in purposeful activities in New York by seeking and submitting payment demands for claims made under New York's No-Fault laws, as detailed, *infra*.

83.    The Defendants' activities in and contacts with New York were purposely sought and transacted to take advantage of the benefits available under New York's No-Fault laws.

84.    As the allegations and causes of action in the within Complaint arise from (a) the Defendants' unlawful acts committed in the State of New York, and (b) the fraudulent billing that Defendants generated and submitted from within the State of New York seeking payment under New York's No-Fault laws, there is no question that there exists a substantial relationship between the transactions at issue and Liberty Mutual's causes of action.

## IV.    NO-FAULT LAWS AND RELEVANT LICENSING STATUTES

### A.    GENERAL OVERVIEW OF NEW YORK'S NO-FAULT LAWS

85.    Liberty Mutual underwrites automobile insurance in the State of New York.

86.    New York's No-Fault laws are designed to ensure that injured victims of automobile accidents have an efficient mechanism to pay reasonable fees for necessary healthcare services, including prescription drugs.

87.    Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 5101, *et seq*.), and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. § 65, *et seq*.) (collectively, "the No-Fault laws"), automobile insurers are required to provide Personal Injury Protection Benefits (hereinafter, "No-Fault benefits") to Liberty Mutual claimants.

88.    Under New York's No-Fault laws, individuals are entitled to be compensated for "basic economic loss" resulting from injuries caused by the operation of an automobile.

89.    "Basic economic loss" is defined to include "all necessary expenses" for prescription drug services.  N.Y. Ins. Law § 5102(a)(1); 11 N.Y.C.R.R. § 65-1.1.

90.    No-Fault benefits include at least $50,000.00 per Liberty Mutual claimant for necessary expenses that are incurred for healthcare goods and services, including prescription drugs.

### B.    ELIGIBILITY REQUIREMENTS UNDER NEW YORK'S NO-FAULT LAWS

91.    Pharmacies are not eligible to collect payment under New York's No-Fault laws if they fail "to meet **any** applicable New York State or local licensing requirement necessary to perform such services in New York."  *See* 11 N.Y.C.R.R. § 65-3.16(a)(12) (emphasis added).

92.    New York's Education Law applies to pharmacies.  *See* N.Y. Educ. Law § 6800, *et seq.*

93.    Under New York Education Law § 6808, no person, firm, corporation or association shall possess drugs, prescriptions or poisons for the purpose of compounding, dispensing, retailing, wholesaling or manufacturing, or shall offer drugs, prescriptions or poisons for sale at retail or wholesale unless registered by the New York State Department of Education as a pharmacy, wholesaler, manufacturer or outsourcing facility.

### 1.    Duties of Pharmacies and Their Owners

94.    Pharmacy owners and supervising pharmacists "shall be responsible for the proper conduct of [the] pharmacy."  N.Y. Educ. Law § 6808(2)(e).

95.    "No pharmacist shall have personal supervision of more than one pharmacy at the same time."  *Id.*

96.    Only a licensed pharmacist or pharmacy intern may perform professional pharmacy services.  *See* 8 N.Y.C.R.R. § 63.6; 8 N.Y.C.R.R. § 29.7(21).

97.    Pursuant to 8 N.Y.C.R.R. § 63.6(b)(7), "[p]harmacists or pharmacy interns shall conduct a prospective drug review before each prescription is dispensed or delivered to the patient," which "review shall include screening for potential drug therapy problems due to therapeutic duplication, drug-drug interactions, including serious interactions with over-the-counter drugs, incorrect drug dosage or duration of drug treatment, drug-allergy interactions, and clinical abuse or misuse."

98.    With regard to both off-premises and on-premises deliveries of drugs and medications, nothing in either delivery scenario "shall prevent a pharmacist or pharmacy intern from refusing to dispense a prescription if, in his or her professional judgment, potential adverse effects, interactions or other therapeutic complications could endanger the health of the patient." 8 N.Y.C.R.R. § 63.6(b)(8)(i)(e), § 63.6(b)(8)(ii)(d)(5).

99.    For a drug or medication that is delivered on the pharmacy's premises, before dispensing a medication to a new patient or a new medication to an existing patient, the pharmacist or pharmacy intern must personally counsel the patient by telephone or in person on appropriate matters, including known indications, common adverse side effects or interactions, and therapeutic contraindications.  8 N.Y.C.R.R. § 63.6(b)(8)(i)(a)-(b).

100.    When dispensing a drug or medication to a patient off of pharmacy premises, the pharmacist or pharmacy intern must "include with each prescription a written offer to counsel the patient" regarding the drug or medication, including its "known indications" and "common severe side or adverse effects or interactions and therapeutic contraindications that may be encountered." 8 N.Y.C.R.R. § 63.6(b)(8)(i)(a)(1), (4), § 63.6(b)(8)(ii)(a).

101.     The written offer of counseling for drugs dispensed off of pharmacy premises "shall provide a telephone number at which a licensed pharmacist or pharmacy intern may be readily reached."  8 N.Y.C.R.R. § 63.6(b)(8)(ii)(a).

102.     When dispensing a drug or medication to a patient off of pharmacy premises, if a pharmacist or pharmacy intern determines that the prescription(s) present "potential drug therapy problems which could endanger the health of the patient," such as "therapeutic duplications, drug-drug interactions and drug-allergy interactions," the pharmacist or pharmacy intern "shall personally contact the patient" either by phone or in person to "offer counseling on the identified potential drug therapy problems" and other issues that the pharmacist or pharmacy intern deems appropriate in their judgment.  8 N.Y.C.R.R. § 63.6(b)(8)(ii)(d), (1).

103.     The responsibility of offering counseling to patients in these situations "shall not be delegated to an individual not authorized to practice pharmacy under a license or limited permit."  8 N.Y.C.R.R. § 68.6(b)(8)(ii)(d)(2).

104.     If the patient refuses to accept counseling, such refusal must be documented.  8 N.Y.C.R.R. § 63.6(b)(8)(ii)(d)(4).

105.     An individual who is not a licensed pharmacist is not authorized to perform functions requiring professional judgment, and thus cannot "interpret and evaluate a prescription for conformance with legal requirements, authenticity, accuracy and interaction of the prescribed drug with other known prescribed and over-the-counter drugs," cannot "sign or initial any record of dispensing required to be maintained by law," and cannot "counsel patients."  8 N.Y.C.R.R. § 29.7(a)(21)(ii)(b)(2), (5), (6), (7).

106.     Aiding and abetting an unlicensed person to practice a profession, including pharmacy, is considered a crime.  N.Y. Educ. Law § 6512.

14

### 2.    **Unlawful Prescription Referral Arrangements**

107.    New York law prohibits registered pharmacies from exploiting patients for financial gain.  8 N.Y.C.R.R. § 29.1(b)(2) (prohibiting registered pharmacies from "exercising undue influence on the patient or client, including the promotion of the sale of services, goods, appliances or drugs in such manner as to exploit the patient or client for the financial gain of the practitioner or of a third party").

108.    New York law prohibits registered pharmacies from engaging in unlawful referral relationships.  *Id.* at § 29.1(b)(3) (prohibiting registered pharmacies from "directly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or client or in connection with the performance of professional services.").

109.    New York Education Law § 6509-a prohibits a professional licensee, including a licensed pharmacist, from "directly or indirectly" requesting, receiving, or participating in the division, transference, assignment, rebate, splitting or refunding of a fee in connection with professional care or services related to drugs and/or medications.

110.    Likewise, under New York Public Health Law § 238-a, a practitioner authorized to order pharmacy services may not make a referral for such services to a healthcare provider authorized to provide such services, including to pharmacies, where such practitioner has a financial relationship with such healthcare provider.  A financial relationship includes a compensation agreement and includes an arrangement with a healthcare provider that is in excess of fair market value or that provides compensation that varies directly or indirectly based on the volume or value of any referrals or business between the parties.  N.Y. Pub. Health Law § 238-a(1), (5); *see also* N.Y. Educ. Law § 6530(18) (defining professional misconduct of physicians

and physician assistants to include "[d]irectly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or in connection with the performance of professional services"); N.Y. Educ. Law § 6530(38) (defining professional misconduct of physicians and physician assistants to include "[e]ntering into an arrangement or agreement with a pharmacy for the compounding and/or dispensing of coded or specially marked prescriptions").

111.    It is a crime for "[a]ny person to enter into an agreement with a physician…for the compounding or dispensing of secret formula (coded) prescriptions."  N.Y. Educ. Law § 6811.

### 3.    Electronic Prescription Mandate

112.    New York law requires electronic prescriptions for both controlled and non-controlled substances.  N.Y. Educ. Law § 6810(10); N.Y. Pub. Health Law § 281(3).

113.    The electronic prescription mandate was intended to reduce prescription drug fraud and misuse.  *See* N.Y. Senate Bill S7637 (2011-2012 Leg. Session) (explaining how "E-prescribing is a secure method of transmitting prescriptions from practitioners to pharmacists. Since an e-prescription cannot be physically altered, forged, or stolen …, it curtails prescription fraud.").

114.    There are few exceptions to the electronic prescription mandate, such as when electronic prescribing is not available due to temporary technological or electrical failure, where the prescribing provider has obtained a waiver, or where drugs cannot be prescribed electronically in a timely manner (and such delay would adversely impact the patient's medical condition).  N.Y. Educ. Law § 6810(10); N.Y. Pub. Health Law § 281(3).

115.    If a prescription is not issued electronically, then the prescribing provider must indicate in the patient's health record the reason that the prescription was not issued electronically. N.Y. Educ. Law § 6810(11)-(12).

116.    If the prescriber has obtained a waiver from the New York Department of Health because of "exceptional circumstances," then the prescriptions must be issued using an Official New York State Prescription Form or an oral prescription in accordance with New York law. N.Y. Educ. Law § 6810(10)(c); N.Y. Pub. Health Law § 281(3).

117.    Absent one of these limited exceptions, prescribing providers must prescribe all drugs and medications electronically.

### C.    CLAIMING REIMBURSEMENT UNDER NEW YORK'S NO-FAULT LAWS

118.    Claimants can assign their No-Fault benefits directly to pharmacies.

119.    Under a duly executed assignment, a claimant's pharmacy may submit claims directly to an insurance company and receive payment for necessary pharmacy services rendered. 11 N.Y.C.R.R. § 65.3-11(a).

120.    Pharmacies can submit claims using the claim form required by the New York State Department of Financial Services f/k/a New York State Department of Insurance ("DOI") (known as "Verification of Treatment by Attending Physician or Other Provider of Health Service" or more commonly as an "NF-3 form").  11 N.Y.C.R.R. § 65.3-11(b).

121.    Alternatively, pharmacies may submit claims to insurance carriers using the Health Insurance Claim Form (known as the "CMS-1500" form and formerly known as the "HCFA-1500" form).

122.    NF-3 and CMS-1500 forms are important because they certify that the pharmacy's request for payment is not materially false, misleading, or fraudulent, subject to the following warning:

"Any person who knowingly and with intent to defraud any insurance company or other persons files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime[.]"

N.Y. Ins. Law § 403(d).

123.  Pharmacies make material misrepresentations when they submit NF-3 or CMS-1500 forms that omit or misrepresent material information about the billed-for services or the pharmacies' eligibility to collect No-Fault payments.

124.  It is a material misrepresentation to submit NF-3 or CMS-1500 forms for prescription drugs that (a) are never provided, (b) are not necessary, (c) are referred to the pharmacy pursuant to unlawful arrangements with prescribing providers, (d) are dispensed without required supervision or regard for patient safety and well-being, and/or (e) are billed at a greater monetary charge than is permitted under the applicable fee schedule.

### D.  REIMBURSEMENT FOR PRESCRIPTION DRUGS UNDER NEW YORK'S NO-FAULT LAWS

125.  A pharmacy's misrepresentations regarding compliance with the applicable fee schedule is material because the New York Workers' Compensation Board has established a schedule of fees known commonly as the "Workers' Compensation Fee Schedule" ("Fee Schedule").

126.  The Fee Schedule is used by healthcare providers and insurers to determine the level of reimbursement payable on legitimate claims.

127.  The Fee Schedule applicable to pharmacies and prescription drugs is set forth under 12 N.Y.C.R.R. § 440.1, *et seq*.

128.  In terms of charges submitted by pharmacies prior to October 1, 2019, 12 N.Y.C.R.R. § 440.5(a)(1)(i) states that a provider may charge no more than the Average Wholesale

Price ("AWP") for the national drug code ("NDC") for the drug on the day it was dispensed minus 12% of the AWP, plus a single dispensing fee of $4.00, for brand name drugs or medicines, and minus 20 percent of the average wholesale price, plus a dispensing fee of $5.00, for generic drugs or medicines.

129.    The NDC is a unique 10-digit, 3-segment numeric identifier assigned to each drug that reflects the vendor of the drug, identifies the drug itself, and indicates the quantity in which the drug is packaged.  Each NDC number has a corresponding AWP, which identifies the price.

130.    AWP means the average wholesale price of a prescription drug as provided in the most current release of the Red Book published by Thomson Reuters or Medi-Span Master Drug Database by Wolters Kluwer Health, or any successor publisher, on the day a drug is dispensed. 12 N.Y.C.R.R. § 440.2(a).

131.    For charges submitted by pharmacies for brand name and generic prescription drugs or medicines on or after October 1, 2019, 12 N.Y.C.R.R. § 440.5(a)(1)(ii) states that a provider may charge no more than, as applicable here, the lesser of the calculated cost or the usual and customary price for the prescription drug or medication.

132.    "Calculated cost means the average wholesale price for the national drug code of the prescription drug or medicine on the day it was dispensed plus a dispensing fee. For brand name drugs the Calculated cost shall be AWP minus twelve percent of the Average Wholesale price plus a dispensing fee of four dollars. For generic drugs the Calculated cost shall be AWP minus twenty percent plus a dispensing fee of five dollars."  12 N.Y.C.R.R. § 440.2(c).

133.    "Usual and customary price means the retail price charged to the general public for a prescription drug."  12 N.Y.C.R.R. § 440.2(s).

134.     Under New York's No-Fault Laws, healthcare providers, including pharmacies, are prohibited from submitting charges that exceed the amounts set forth in the Fee Schedule.

135.     Additionally, New York's No-Fault Laws expressly provide that "[a] provider of health care services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet **any** applicable New York State or local licensing requirement necessary to perform such service in New York." *See* 11 N.Y.C.R.R. § 65-3.16(a)(12) (emphasis added).

136.     Accordingly, if a professional healthcare service provider, including a pharmacy, fails to meet any applicable licensing requirement necessary to perform a service, then the provider is not lawfully entitled to seek or collect No-Fault benefits under New York's No-Fault laws.

137.     As alleged herein, the Defendants failed to meet several laws and regulations when providing pharmacy services to claimants during the course of this scheme; therefore, the Pharmacy Defendants were never eligible to collect No-Fault payments from Liberty Mutual.

## V.     SPECIFIC FACTS ABOUT THE DEFENDANTS' SCHEME TO DEFRAUD

### A.     NEXUS AMONG THE DEFENDANTS

138.     On paper, In & Out Rx, Total Med Rx, and New Lots Rx appear to be owned and operated by separate and distinct individuals.

139.     The Pharmacy Defendants filled identical prescriptions for drugs written by McGee while operating out of Beach Medical Rehabilitation P.C. and South Bronx Medical Rehabilitation P.C.

140.     True and accurate copies of a representative sample of prescriptions from In & Out Pharmacy are contained below:





141. True and accurate copies of a representative sample of prescriptions from Total Med Rx are contained below:[4]



---

[4] The depicted prescriptions from Total Med Rx were referred by Elizabeth Lafargue, FNP-BC, an employee of the McGee entity South Bronx Medical.

22

142.    True and accurate copies of a representative sample of prescriptions from New Lots Rx are contained below:[5]







---

[5] The depicted prescriptions from Total Med Rx were referred by Elizabeth Lafargue, FNP-BC, an employee of the McGee entity South Bronx Medical.

143. The Defendants engaged in seriatim billing.

| Company | Date(s) Pharmacy Provided |
|---|---|
| Total Med Rx Inc. | 11/10/2023 - 1/17/24 |
| In & Out Rx Inc. | 2/7/2024 - 5/31/24 |
| New Lots Rx Corp. | 4/2/2024 - 5/14/24 |

144. On May 14, 2024, a Liberty Mutual investigator visited In & Out Rx, wherein the supervising pharmacist, Stephen Scott Laddy, advised Liberty Mutual that the pharmacy would only be open for a few months and would likely be shut down by August.

145. Nearly all of the prescriptions written by McGee at the clinics located at (1) 2558 Holland Avenue, Bronx, NY, (2) 1100 Pelham Parkway, Bronx, (3) 1894 Eastchester Road, Bronx, NY, (4) 2386 Jerome Avenue, Bronx, (5) 1200 Waters Place, Bronx, (6) 700 Utica Avenue, Brooklyn, NY, and (7) 384 East 149th Street, Bronx, NY contained the same three items, regardless of the nature of the motor vehicle accident, patient demographics, and/or the patient's purported injuries:

    a.    Lidocaine 5% External Ointment;
    b.    Diclofenac 2% External Solution; and
    c.    Cyclobenzaprine HCL 7.5 mg Oral Tablets.

146. A true and accurate copy of a representative sample of the pre-determined Pain Products purportedly dispensed by In & Out Rx is contained below:



PROVIDER:
IN & OUT RX INC (516)283-2692 (516)283-2044
359 CENTRAL AVE (REAR)
Lawrence NY 11559

| 15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
|---|---|---|---|---|
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
| 02/14/24 | 50 E 191 ST APT 1B Bronx NY, 10468 | DICLOFENAC SODIUM SOL 2% | 62332-0487-12 (112 units) | 2,153.76 |
| 02/14/24 | 50 E 191 ST APT 1B Bronx NY, 10468 | LIDOCAINE OINT 5% | 51672-3020-09 (250 units) | 1,790.00 |
| 02/14/24 | 50 E 191 ST APT 1B Bronx NY, 10468 | CYCLOBENZAPRINE HYDR TAB 7.5MG | 59746-0735-01 (90 units) | 350.10 |
| | | | TOTAL CHARGES TO DATE | $ 4293.86 |

147.    A true and accurate copy of a representative sample of the pre-determined Pain Products purportedly dispensed by Total Med Rx is contained below:

**PROVIDER'S NAME AND ADDRESS***

**TOTAL MED RX INC**
214-85 Jamaica Ave, Jamaica, NY, 11428

| 15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | | |
|---|---|---|---|---|---|
| Date of Service | Place of Service Including Zip Code | Description of Treatment or Health Service Rendered | Unit | Fee Schedule Treatment Code | Charges |
| 12/19/2023 | 50 E 191 ST #1B, BRONX, NY, 10468 | LIDOCAINE OINT 5% | 250 | 51672-3008-05 | $ 1905.00 |
| 12/19/2023 | 50 E 191 ST #1B, BRONX, NY, 10468 | Penasaid Topical Solution 2% | 112 | 70748-0335-01 | $ 2685.76 |
| 12/19/2023 | 50 E 191 ST #1B, BRONX, NY, 10468 | Cyclobenzaprine HCL 7.5 Mg | 90 | 69420-1801-01 | $ 432.90 |
| | | | | TOTAL CHARGES TO DATE | $ 5023.66 |

148.    A true and accurate copy of a representative sample of the pre-determined Pain Products purportedly dispensed by New Lots Rx is contained below:

PROVIDER'S NAME AND ADDRESS

**New Lots Rx Plus Corp**
**29-18 Hoyt Ave**
**South Astoria, NY 11102-1738**
Phone: 718-406-9013 Fax: 718-406-9025

**15. REPORT OF SERVICES RENDERED-- ATTACH ADDITIONAL SHEETS IF NECESSARY**

| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED. | Qty | FEE SCHEDULE TREATMENT CODE | CHARGES SUMMARY |
|---|---|---|---|---|---|
| 05/10/2024 | 29-18 Hoyt Ave ASTORIA, NY 11102 | CYCLOBENZAPRINE 7.5MG | 90 | 69426-1001-01 | 564.30 |
| 05/10/2024 | 29-18 Hoyt Ave ASTORIA, NY 11102 | PENNSAID SOLUTION 2% | 112 | 70748-0335-01 | 2835.36 |
| 05/10/2024 | 29-18 Hoyt Ave ASTORIA, NY 11102 | LIDOCAINE OINTMENT 5% | 250 | 68462-0418-27 | 1902.50 |
| | | | | TOTAL CHARGES TO DATES: | 5102.16 |

149.    Topical pain medications such as diclofenac sodium 2% solution and lidocaine 5% ointment are generally ineffective for treating widespread musculoskeletal pain and therefore were not indicated for the Liberty Mutual claimants billed by the Defendants.

150.    While topical drugs might be appropriate in select cases (e.g., when first-line oral medications are tried but fail; when the patient has specific allergies to certain oral medications; and when the patient is incapable of swallowing pills), the Defendants still billed for these drugs when none of these special circumstances were present.

151.    The specific Pain Products billed to Liberty Mutual by the Defendants are not approved or intended to treat musculoskeletal injuries; rather, they are approved for the treatment of superficial pain, skin conditions, or nerve pain.

152.    Less toxic formulations of topical lidocaine and diclofenac are available over the counter at significantly lower cost.

153.    By prescribing and dispensing Pain Products, McGee and the Defendants unnecessarily subjected the patients to unnecessarily high concentrations of medications intended to treat conditions other than musculoskeletal pain for the purpose of exploiting these patients' available No-Fault benefits.

154.    The bills submitted by the Defendants are fraudulent because the pharmacy services were unnecessary and prescribed pursuant to a pre-determined treatment protocol designed to maximize profits at the expense of patient safety and well-being.

155.    The bills submitted by the Defendants are fraudulent because they were generated pursuant to an unlawful referral and kickback scheme in violation of NY law.

156.    The Defendants were never eligible to collect No-Fault payments from Liberty Mutual under N.Y. Ins. Law § 5102.

157.    The Defendants misrepresented the medical necessity of the prescription drugs that were purportedly provided by the Defendants to the patients of the McGee clinics located at (1) 2558 Holland Avenue, Bronx, NY, (2) 1100 Pelham Parkway, Bronx, (3) 1894 Eastchester Road, Bronx, NY, (4) 2386 Jerome Avenue, Bronx, (5) 1200 Waters Place, Bronx, (6) 700 Utica Avenue, Brooklyn, NY, and (7) 384 East 149th Street, Bronx, NY. *See State Farm Mut. Auto Ins. Co. v. Fayda*, 2015 U.S. Dist. LEXIS 86795, *7 (S.D.N.Y. June 18, 2015) (*citing State Farm Mut. Auto Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 228 (E.D.N.Y. 2009)).

158.    The documents submitted to Liberty Mutual misrepresent the legitimacy of the prescription drugs that were prescribed to patients of the McGee clinics located at (1) 2558 Holland Avenue, Bronx, NY, (2) 1100 Pelham Parkway, Bronx, (3) 1894 Eastchester Road, Bronx, NY, (4) 2386 Jerome Avenue, Bronx, (5) 1200 Waters Place, Bronx, (6) 700 Utica Avenue, Brooklyn,

NY, and (7) 384 East 149th Street, Bronx, NY whereas these prescriptions were provided pursuant to an unlawful referral and kickback arrangement.

### B.    OVERVIEW OF THE DEFENDANTS' SCHEME

159.    At all relevant times, the Pharmacy Defendants failed to comply with New York law governing pharmacies and were not eligible to seek or receive payments under New York's No-Fault laws as a result of the Defendants' scheme to defraud.

160.    The overarching purpose of the Defendants' scheme was to obtain No-Fault payments that the Pharmacy Defendants were not entitled to receive and to funnel these proceeds to Nisanov, Abdurakhmanov, Mosheyev, and/or Kandinov for their personal benefit.

161.    The Defendants achieved this goal by causing the Pharmacy Defendants to submit charges for a pre-determined treatment protocol of medically unnecessary and expensive drugs and medications, including Pain Products.

162.    The Defendants selected those drugs and medications comprising this pre-determined treatment protocol to include those that could be acquired at low cost and then billed at inflated rates to maximize the Defendants' profits.

163.    As explained below, there is significant evidence that the prescriptions for drugs and medications billed by the Pharmacy Defendants to Liberty Mutual under New York's No-Fault laws were funneled to the Pharmacy Defendants pursuant to an unlawful referral relationship with McGee.

164.    These indicia of collusive relationships between the Defendants and the lone prescribing provider—i.e., McGee—includes, among other things, McGee's history of involvement in similar alleged schemes to defraud, the routine use of rubber stamps and pre-printed prescription forms to prescribe Pain Products, and McGee's funneling of the prescriptions

directly to the Pharmacy Defendants without giving claimants any choice of where to fill their prescription.

165.    The Defendants devised and executed their scheme knowing that (a) the prescriptions were issued pursuant to pre-determined treatment protocols of medically unnecessary and ineffective drugs and medications, which elevated profits over genuine patient care, (b) the prescriptions were invalid under New York law, (c) the prescriptions were issued in exchange for unlawful kickbacks or other incentives, and (d) the No-Fault claim documents submitted to Liberty Mutual falsely represented the Pharmacy Defendants' eligibility to collect No-Fault payments.

### C.    FRAUDULENT PHARMACY BILLING

#### 1.    Pre-determined Treatment Protocol

166.    The Defendants' scheme was designed such that prescribers were limited to a pre-determined set of drugs and medications; in doing so, the Defendants ensured that these drugs and medications were prescribed in all cases, regardless of whether the patients even needed or wanted them.

167.    As a result, the Pharmacy Defendants billed Liberty Mutual for the same recurring set of unnecessary, unwarranted, and ineffective Pain Products, including: diclofenac sodium 2% solution, lidocaine 5% ointment, and cyclobenzaprine HCL 7.5 mg tablets.

168.    The Defendants focused on billing for these expensive Pain Products even though substantially similar products were available as over-the-counter drugs at a fraction of the cost.

169.    The Defendants intentionally based their fraudulent scheme on steering McGee to prescribe these specific Pain Products to be billed for by the Pharmacy Defendants, in place of other less expensive products, to maximize the amounts collected by the Defendants in violation of New York's No-Fault laws.

170.    The same Pain Products were ordered for different claimants on the same day by McGee, which is evidence that these medications were prescribed as part of a pre-determined treatment protocol without any regard for whether the Pain Product was necessary or effective.

171.    The chart below contains representative examples of instances where McGee ordered the same Pain Product for different claimants on the same day:

| Claim Number | Claimant Initials | Prescription Date | Medication(s) Prescribed | Prescriber | Pharmacy Defendant |
|---|---|---|---|---|---|
| 055588516 | F.H. | 12/12/23 | Pennsaid 2% external solution Cyclobenzaprine HCL 7.5 mg tablet Lidocaine 5% external ointment | Elizabeth Lafargue | Total Med Rx |
| 055588516 | G.S. | 12/12/23 | Pennsaid 2% external solution Cyclobenzaprine HCL 7.5 mg tablet Lidocaine 5% external ointment | Elizabeth Lafargue | Total Med Rx |
| 056087208 | K.R. | 2/13/24 | Pennsaid 2% external solution Cyclobenzaprine HCL 7.5 mg tablet Lidocaine 5% external ointment | John McGee | In & Out Rx |
| 056087208 | M.G. | 2/13/24 | Pennsaid 2% external solution Cyclobenzaprine HCL 7.5 mg tablet Lidocaine 5% external ointment | John McGee | In & Out Rx |

| Claim Number | Claimant Initials | Prescription Date | Medication(s) Prescribed | Prescriber | Pharmacy Defendant |
|---|---|---|---|---|---|
| 056268047 | B.S. | 3/8/24 | Pennsaid 2% external solution Cyclobenzaprine HCL 7.5 mg tablet Lidocaine 5% external ointment | John McGee | In & Out Rx |
| 056278326 | O.G. | 3/8/24 | Pennsaid 2% external solution Cyclobenzaprine HCL 7.5 mg tablet Lidocaine 5% external ointment | John McGee | In & Out Rx |
| 056268047 | B.S. | 4/3/24 | Pennsaid 2% external solution Cyclobenzaprine HCL 7.5 mg tablet Lidocaine 5% external ointment | John McGee | In & Out Rx |
| 056278326 | O.G. | 4/3/24 | Pennsaid 2% external solution Cyclobenzaprine HCL 7.5 mg tablet Lidocaine 5% external ointment | John McGee | In & Out Rx |
| 056278326 | D.F. | 4/5/24 | Pennsaid 2% external solution Cyclobenzaprine HCL 7.5 mg tablet Lidocaine 5% external ointment | John McGee | In & Out Rx |
| 056087208 | M.G. | 4/5/24 | Pennsaid 2% external solution | John McGee | In & Out Rx |

| Claim Number | Claimant Initials | Prescription Date | Medication(s) Prescribed | Prescriber | Pharmacy Defendant |
|---|---|---|---|---|---|
| | | | Cyclobenzaprine HCL 7.5 mg tablet Lidocaine 5% external ointment | | |
| 056087208 | K.R. | 4/9/24 | Pennsaid 2% external solution Cyclobenzaprine HCL 7.5 mg tablet Lidocaine 5% external ointment | John McGee | In & Out Rx |
| 056351318 | E.H. | 4/9/24 | Pennsaid 2% external solution Cyclobenzaprine HCL 7.5 mg tablet Lidocaine 5% external ointment | Elizabeth Lafargue | New Lots Rx |
| 056369460 | C.J. | 4/17/24 | Pennsaid 2% external solution Cyclobenzaprine HCL 7.5 mg tablet Lidocaine 5% external ointment | John McGee | In & Out Rx |
| 056575156 | P.F. | 4/17/24 | Pennsaid 2% external solution Cyclobenzaprine HCL 7.5 mg tablet Lidocaine 5% external ointment | John McGee | In & Out Rx |
| 056351318 | E.R. | 5/9/24 | Pennsaid 2% external solution Cyclobenzaprine HCL 7.5 mg tablet | Elizabeth Lafargue | New Lots Rx |

| Claim Number | Claimant Initials | Prescription Date | Medication(s) Prescribed | Prescriber | Pharmacy Defendant |
|---|---|---|---|---|---|
| | | | Lidocaine 5% external ointment | | |

172.   The Defendants targeted and selected these particular Pain Products because they could be acquired at a low cost and then billed to Liberty Mutual in terms of the drugs' AWP, which allowed the Defendants to realize a substantial profit for every prescription at Liberty Mutual's and the claimants' expense.

173.   The charts attached hereto as Exhibits 1-3 lay bare the Defendants' disproportionate focus on billing for Pain Products, including the following most commonly billed-for products:

| Drug Name | NDC | Pharmacy Defendant(s) |
|---|---|---|
| Cyclobenzaprine HCL 7.5 mg oral tablet | 59746-0735-01 | In & Out Rx |
| Cyclobenzaprine HCL 7.5 mg oral tablet | 69420-1001-01 | New Lots Rx<br>Total Med Rx |
| Diclofenac sodium 2% solution | 62332-0487-12 | In & Out Rx |
| Diclofenac sodium 2% solution | 70748-0335-01 | New Lots Rx<br>Total Med Rx |
| Lidocaine 5% ointment | 51672-3008-05 | In & Out Rx<br>Total Med Rx |
| Lidocaine 5% ointment | 68462-0418-27 | New Lots Rx |

a.   Diclofenac Sodium 2% Solution

174.   One of the most popular drugs pushed by the Defendants was the generic form of diclofenac sodium 2% solution.

175.   For example, Total Med Rx billed $2,685.76 for generic diclofenac sodium 2% solution with NDC No. 70748-0335-01.

176.    The published AWP of diclofenac sodium 2% solution (NDC No. 70748-0335-01) is $2,686.38 per 112-gram package.

177.    Claimants were prescribed a 112-gram supply of diclofenac sodium 2% solution under the Defendants' pre-determined treatment protocol, which meant that the Defendants could charge approximately $2,149.10 for the drug (after application of the 20% reduction required under applicable New York law).

178.    The wholesale acquisition price ("WAC") of diclofenac sodium 2% solution sold under NDC No. 70748-0335-01 is only $800.00 for a 112-gram supply.

179.    The WAC is an important metric because it generally represents the actual price paid by the pharmacy to acquire the drug.

180.    Acquiring diclofenac sodium 2% solution at or around the WAC meant that the Defendants realized a profit of over $1,349.00 each time that the Pharmacy Defendants billed for 112 grams of diclofenac sodium 2% solution under NDC No. 70748-0335-01.

181.    The Pharmacy Defendants also exploited the AWP and WAC for diclofenac sodium 2% solution, which the Pharmacy Defendants billed under NDC Nos. 13107-0269-47, 62332-0487-12, 68180-0537-01, and 70748-0335-01.

182.    The Pharmacy Defendants deliberately billed for diclofenac sodium 2% solution under NDC Nos. 13107-0269-47, 62332-0487-12, 68180-0537-01, and 70748-0335-01 to exploit the spread between the AWP and the actual market price.

b.    Cyclobenzaprine HCL 7.5 Mg Oral Tablet

183.    Cyclobenzaprine is a muscle relaxant typically prescribed as a 5mg or 10mg tablet, rather than the 7.5mg strength tablet that New Lots Rx billed $564.30 for in connection with

claimant E.R. and other Liberty Mutual claimants, which is considerably more expensive than the 5mg and 10mg doses:

| Drug | NDC | AWP |
|---|---|---|
| Cyclobenzaprine (10 mg) | 59746-0177-10 | $1.10/tablet |
| Cyclobenzaprine (7.5 mg) | 69420-1001-01 | $6.27/tablet |

184.    NDC No. 69420-1001-01 is issued in proportions of 1,000 tablets at a time.

185.    The published AWP of a 100 tablet supply of cyclobenzaprine sold under NDC No. 69420-1001-01 was approximately $627.77.

186.    The Pharmacy Defendants could charge approximately $451.99 for a 90 tablet supply of cyclobenzaprine (after application of the 20% reduction required under applicable New York law) under NDC No. 69420-1001-01.

187.    The WAC for cyclobenzaprine sold under NDC No. 69420-1001-01 was approximately $523.14 per 100 tablets.

188.    Acquiring cyclobenzaprine at or around the WAC meant that the Defendants realized a profit of over $104.00 each time that the Pharmacy Defendants billed for 90 tablets of cyclobenzaprine under NDC No. 69420-1001-01.

189.    The Defendants also exploited the AWP and WAC for cyclobenzaprine, which the Pharmacy Defendants billed under NDC Nos. 29300-0414-01, 59746-0735-01, 69420-1001-01, and 72888-0013-01.

### c.    Lidocaine 5% Ointment

190.    The Defendants also exploited the AWP and WAC for lidocaine 5% ointment, which the Pharmacy Defendants billed under NDC Nos. 16714-0878-02, 33342-0405-50, 51672-3008-05, 62332-0424-50, 68462-0418-27, and 70752-0113-04

191.    For example, Total Med Rx billed $1,905.00 for a 250 gram supply of lidocaine 5% ointment under NDC No. 51672-3008-05.

192.    The published AWP of a 50 gram supply of lidocaine 5% ointment sold under NDC No. 51672-3008-05 was approximately $380.93.

193.    The Pharmacy Defendants could charge approximately $1,523.78 for a 250 gram supply of lidocaine 5% ointment (after application of the 20% reduction required under applicable New York law) under NDC No. 51672-3008-05.

194.    The WAC for lidocaine 5% ointment sold under NDC No. 51672-3008-05 is $50.00 per 50 grams.

195.    Acquiring lidocaine 5% ointment at or around the WAC meant that the Defendants realized a profit of over $1,273.00 each time that the Pharmacy Defendants billed for 250 grams of lidocaine 5% ointment under NDC No. 51672-3008-05.

196.    The Defendants generated substantial profits because they knew that all No-Fault claims were priced and paid according to the AWP and that they could acquire the billed-for drugs at a cost well below the drugs' AWP.

**2.    Billing for Medically Worthless Pain Products**

197.    The Pharmacy Defendants billed Liberty Mutual for Pain Products, including diclofenac sodium 2% solution and lidocaine 5% ointment, that were medically unnecessary, not indicated for the treatment of musculoskeletal injuries, and/or chosen for their potential reimbursement value over lower-priced alternatives available over the counter.

198.    Pain medications, including topical NSAIDs, lack proven effectiveness for the treatment of widespread musculoskeletal pain.

199.    Pain medications may be indicated where the patient failed a trial of oral medications, has specific allergies to certain oral medications, or is incapable of swallowing pills.

200.    However, despite no documentation of an intolerance to oral NSAIDs or muscle relaxants, the Pharmacy Defendants' claimants were prescribed both topical and oral NSAIDs to treat a diagnosis of musculoskeletal pain.

201.    The specific Pain Products billed to Liberty Mutual by the Pharmacy Defendants are not approved or intended to treat musculoskeletal injuries; rather, they are approved for the treatment of superficial pain, skin conditions, or nerve pain.

202.    Less toxic formulations of topical lidocaine and diclofenac are available over the counter at significantly lower cost.

203.    By prescribing and dispensing a pre-determined treatment protocol of among the most expensive pain medications, McGee and Defendants subjected the patients to unnecessarily high concentrations of Pain Products intended to treat conditions other than musculoskeletal pain for the purpose of exploiting these patients' available No-Fault benefits.

a.    Unnecessary Lidocaine 5% Ointment

204.    The Pharmacy Defendants billed Liberty Mutual for lidocaine 5% ointment.  *See* Exhibit 1.

205.    Lidocaine 5% ointment is not a first-line treatment for musculoskeletal pain; rather, it is indicated for temporary pain relief for minor burns, skin abrasions, insect bites, and as a topical anesthetic.

206.    Indeed, the product labeling for lidocaine 5% ointment indicates that the drug is not effective when applied on intact skin, which is because lidocaine 5% ointment is incapable of sufficiently penetrating intact skin.  Even though topical lidocaine is sometimes used to treat

neuropathic pain in adults, high concentrations of the drug must be used because topical lidocaine crosses the skin poorly.

207.    The patients prescribed lidocaine 5% ointment billed to Liberty Mutual by the Pharmacy Defendants did not have any documented minor skin conditions or true neuropathic pain warranting lidocaine 5% ointment.

208.    Moreover, lidocaine 4% cream under the brand name Aspercreme is available at neighborhood pharmacies at a small fraction of the amount charged by the Pharmacy Defendants for the lidocaine 5% ointment.

209.    True and accurate representations of Aspercreme are depicted below:





210.    The Pharmacy Defendants' bills for lidocaine 5% ointment are fraudulent and Liberty Mutual is entitled to recover payments and disclaim coverage in all such claims including, but not limited to, the claims listed in Exhibits 4-6.

b.    Unnecessary Diclofenac Sodium 2% Solution

211.    The Pharmacy Defendants billed for massive quantities of diclofenac sodium 2% solution, which is not effective, approved, or indicated for the topical treatment of musculoskeletal injuries, such as those sustained in a motor vehicle accident.

212.    Diclofenac sodium 2% solution (i.e., Pennsaid) is FDA-approved for the topical treatment of osteoarthritis of the knee.

213.    A true and accurate representation of the FDA approval of diclofenac sodium 2% solution (Pennsaid) is depicted below:



214.    Diclofenac sodium 2% solution thus is designed for minimal depth of absorption to keep the drug in the skin to optimize treatment of osteoarthritis.

215.    The use of diclofenac sodium 2% solution in patients without osteoarthritis exposes the patients to increased and unnecessary risks for skin irritation, hypersensitivity, and photosensitivity.

216.    Diclofenac solution also exists in a 1% concentration; it is an NSAID that may be effective in the treatment of pain in the peripheral joints, such as the hand or knee, but it has no

proven efficacy for pain relief for larger and deeper joints, such as the spine or shoulder, to which the gel cannot penetrate.

217.    Like diclofenac sodium 2% solution, diclofenac sodium 1% gel is not effective to treat complaints of pain to multiple areas of the body.

218.    Simply because diclofenac sodium 2% solution is double the concentration of diclofenac sodium 1% gel does not mean that diclofenac sodium 2% solution is two times more effective for the treatment of joint pain, for which condition diclofenac sodium 2% solution is not indicated.

219.    Diclofenac sodium 2% solution is substantially more toxic topically and systematically than diclofenac sodium 1% gel.

220.    The Fee Schedule calls for reimbursement of diclofenac sodium 2% solution at a much higher rate than generic diclofenac sodium 1% gel.

221.    The generic diclofenac sodium 2% solution billed to Liberty Mutual by the Pharmacy Defendants has an AWP of $960.00, $2,686.37 or $2,686.38 per 112-gram package.

222.    Generic diclofenac sodium 1% gel (NDC No. 69097-0524-44) has an AWP of less than $53.00 per 100-gram package.

223.    Therefore, the Defendants could charge no more than $85.00 for each prescription of 200 grams of generic diclofenac sodium 1% gel.

224.    However, the Defendants could charge over $2,600.00 for each prescription of 112 grams of generic diclofenac sodium 2% solution under NDC Nos. 13107-0269-47, 62332-0487-12, 68180-0537-01 and 70748-0335-01.

225.    Since May 2020, diclofenac sodium 1% gel has been available over the counter; a 100-gram tube of Voltaren topical 1% gel may be purchased at retail without a prescription for less than $20.00.

226.    True and accurate representations of Voltaren are depicted below:



227.    Accordingly, the Defendants were motivated by profit to ensure that McGee ordered diclofenac sodium 2% solution for their patients instead of the less expensive diclofenac sodium 1% gel even though the 2% preparation is neither approved nor effective at treating joint pain.

228.    The Pharmacy Defendants were not eligible for No-Fault reimbursement for the diclofenac sodium 2% solution billed to Liberty Mutual because these drugs were not medically necessary or effective in treating the claimants' musculoskeletal conditions.

229.    The Defendants induced McGee to prescribe diclofenac sodium 2% solution to permit the Defendants to submit inflated and/or excessive charges for this product.

230.    The Pharmacy Defendants' bills for diclofenac sodium 2% solution are fraudulent and Liberty Mutual is entitled to recover payments and disclaim coverage in all such claims including, but not limited to, the claims listed in Exhibits 4-6.

### D.    DEFENDANTS' UNLAWFUL REFERRAL RELATIONSHIP WITH MCGEE

231.    The Defendants' scheme to defraud required a high volume of facially valid prescriptions to permit the Pharmacy Defendants to submit charges for prescription Pain Products.

232.    To maintain a steady flow of prescriptions for a particular set of expensive Pain Products, the Defendants colluded with McGee, who specializes in No-Fault and had large available patient bases for the Defendants to take advantage of.

233.    McGee generated prescriptions for Pain Products in accordance with the Defendants' pre-determined prescription protocol regardless of whether the patients needed, or even wanted, the drugs and medications.

234.    Upon information and belief, the Defendants paid kickbacks or other incentives to McGee and/or his employees in exchange for these unlawful prescriptions in violation of New York law.

235.    McGee funneled these prescriptions to the Pharmacy Defendants without giving the patients any choice of where to fill the prescriptions.

236.    These unlawful referral relationships were crucial to the success of the Defendants' scheme to defraud and resulted in false and fraudulent charges for medically unnecessary and expensive drugs and medications, including Pain Products.

### 1.    McGee's History of Fraudulent Activity

237.    McGee has a history of being accused of engaging in fraudulent activity under New York's No-Fault laws.

238.    Medical providers allegedly relied upon McGee, among others, and his entity, Yellowstone Medical Rehabilitation P.C., to provide bogus referrals for computerized range of motion testing and muscle testing to further a conspiracy to defraud insurers. *See Allstate Ins. Co. v. Jeffrey S. Rauch, D.C. d/b/a Rego Park Healthcare Alliance*, No. 2:22-cv-02424-JMA-LGD (E.D.N.Y.).

239.    In exchange for these bogus referrals, it is alleged that McGee would receive a kickback/portion of the fraudulent proceeds from the No-Fault payments. *Id*.

240.    In furtherance of the conspiracy to defraud, it is alleged that McGee would manually perform the same testing that the claimants were being referred for. *Id*.

241.    The computerized range of motion testing and muscle testing that McGee made referrals for was allegedly never incorporated into the treatment plans by McGee. *Id*.

242.    McGee would allegedly offer identical treatment to each claimant regardless of their complaints, injuries, or want. *Id*.

243.    The *Rauch* lawsuit further alleges that McGee would submit identical letters of medical necessity to support the fraudulent treatment being referred. *Id*.

244.    McGee and his entity, Integrated Medical Rehabilitation and Diagnostics P.C., allegedly submitted hundreds of fraudulent charges to insurers for excessive and medically useless

services in exchange for engaging in an illegal referral and kickbacks scheme. *See Gov't Empls. Ins. Co. v. McGee, D.O.*, No. 1:23-cv-07753-PKC-PK (E.D.N.Y.).

245.    McGee allegedly engaged in an illegal referral and kickback scheme to provide a steady stream of patients to his entity. *Id*.

246.    These kickbacks were allegedly performed to provide a client base for McGee and to fraudulently profit from the treatment performed. *Id*.

247.    Allegedly, McGee performed the same series of treatments on each claimant at issue as part of a pre-determined fraudulent treatment protocol. *Id*.

248.    McGee allegedly participated in a scheme to defraud insurers wherein he submitted fraudulent bills for treatment through the creation of illegally owned, incorporated, and licensed professional corporations, including the entities Queens-Brooklyn Medical Rehabilitation, P.C., Queens Brooklyn Jewish Medical Rehabilitation P.C., Queens-Roosevelt Medical Rehabilitation P.C., Woodward Medical Rehabilitation P.C., Advanced Medical Rehabilitation P.C., Integrated Medical Rehabilitation and Diagnostics P.C., Yellowstone Medical Rehabilitation P.C., and Beach Medical Rehabilitation P.C. *See Allstate Ins. Co. v. Ilyaich*, No. 1:13-cv-05464-NG-LB (E.D.N.Y.).

249.    It is alleged in the *Ilyaich* lawsuit that McGee engaged in fraudulent practices by creating illegally owned and fraudulently incorporated professional corporations that were used to submit fraudulent bills to insurance companies. *Id*.

250.    In exchange for these fraudulent practices, McGee allegedly received a portion of the proceeds and profits from the individuals in control of his entities. *Id*.

251.    Patients were allegedly referred for medically unnecessary therapy and diagnostic tests by McGee and his fraudulently incorporated entities, Advanced Medical Rehabilitation, P.C.,

Integrated Medical Rehabilitation and Diagnostics, P.C., Yellowstone Medical Rehabilitation, P.C., Queens-Brooklyn Medical Rehabilitation P.C., and Queens-Brooklyn Jewish Medical Rehabilitation, P.C. *See State Farm Mut. Auto. Ins. Co. v. McGee*, No. 1:10-cv-03848-PKC-RML (E.D.N.Y.).

252.    It is alleged in the *McGee* lawsuit that McGee falsely represented in corporate documents that he was the owner of the named clinics and, instead, that these clinics were secretly owned and controlled by others. *Id*.

253.    McGee allegedly engaged in a pre-determined treatment protocol to perform medically unnecessary tests and services in collaboration with those secretly in control of his clinics. *Id*.

254.    McGee allegedly prescribed medically unnecessary drugs through his clinic—Beach Medical Rehabilitation P.C.—to be dispensed by Fresh Meadow Pharmacy Inc., Town Rx Inc, and Siki's Pharmacy Inc. *See LM Gen. Ins. Co. v. Fresh Meadow Pharmacy Inc.*, No. 1:24-cv-05373-OEM-VMS (E.D.N.Y.).

255.    It is alleged that McGee prescribed nearly identical medication for the claimants at issue. *Id*.

256.    McGee was the primary source of referrals for the defendants in *Fresh Meadow* as part of their scheme. *Id*.

### 2.    Depriving Claimants' Choice of Pharmacy

257.    The Defendants and McGee ensured that prescriptions were funneled directly to the Pharmacy Defendants to permit the Pharmacy Defendants to bill for the prescribed drugs and medications without giving the claimants a choice of pharmacy.

258.    Claimants received the medications billed to Liberty Mutual by the Pharmacy Defendants directly at the No-Fault clinics or through delivery to their homes.

259.    The Defendants chose to dispense these medications directly to patients because the Pharmacy Defendants' physical locations were not convenient to the majority of its claimants who resided outside of the New York City, Forest Hills, Brooklyn, Lawrence, and Queens Village neighborhoods where the Pharmacy Defendants are located.

260.    The chart below contains representative examples illustrating the considerable distance between In & Out Rx's physical location at 359 Central Avenue Rear, Lawrence, NY 11559 and the residences of many of its claimants:

| Claimant | Claimant's Residence | Approximate Miles From In & Out Rx |
|---|---|---|
| J.C. (claim no. 056715557) | Bronx, NY | 21.3 |
| K.J. (claim no. 056527538) | Bronx, NY | 21.3 |
| K.R. (claim no. 056087208) | Bronx, NY | 21.3 |
| D.F. (claim no. 056278326) | White Plains, NY | 36.9 |
| M.G. (claim no. 056087208) | Bronx, NY | 21.3 |
| B.S. (claim no. 056268047) | Bronx, NY | 21.3 |
| G.S. (claim no. 055588516) | Bronx, NY | 21.3 |

261.    The chart below contains representative examples illustrating the considerable distance between Total Med Rx's physical location at 214-85 Jamaica Avenue, Queens Village, NY 11428 and the residences of many of its claimants:

| Claimant | Claimant's Residence | Approximate Miles From Total Med Rx |
|---|---|---|
| G.S. (claim no. 055588516) | Bronx, NY | 12.7 |
| A.W. (claim no. 055332758) | Bronx, NY | 12.7 |

| Claimant | Claimant's Residence | Approximate Miles From Total Med Rx |
|---|---|---|
| A.B. (claim no. 055245033) | Bronx, NY | 12.7 |
| D.M. (claim no. 055519315) | Bronx, NY | 12.7 |
| K.Y. (claim no. 055185644) | Brooklyn, NY | 12.7 |

262.    The chart below contains representative examples illustrating the considerable distance between New Lots Rx's physical location at 2918 Hoyt Ave. South, Astoria, NY 11102 and the residences of many of its claimants:

| Claimant | Claimant's Residence | Approximate Miles From New Lots Rx |
|---|---|---|
| E.R. (claim no. 056351318) | Bronx, NY | 7.3 |
| J.O. (claim no. 056482946) | Bronx, NY | 7.3 |
| T.B. (claim no.056319274) | Bronx, NY | 7.3 |
| E.E. (claim no. 056455819) | Bronx, NY | 7.3 |
| W.C. (claim no. 055142918) | Bronx, NY | 7.3 |
| H.W. (claim no. 056535358) | Bronx, NY | 7.3 |
| M.N. (claim no. 056671595) | Bronx, NY | 7.3 |
| R.R. (claim no. 056374799) | Bronx, NY | 7.3 |

263.    McGee and the Defendants eliminated any option of pharmacy by choosing the Pharmacy Defendants for the patients and immediately filling and directly dispensing the drugs and medications to the claimants at the No-Fault clinics or their residences.

### E.    FAILURE TO LAWFULLY OVERSEE DISPENSING OF DRUGS AND MEDICATIONS

264.    Nearly all of the Liberty Mutual claimants were prescribed the Pain Products.

265.    Topical diclofenac, and NSAIDs in general, may cause side-effects, including damage to the intestines, the lining of the stomach, and other serious medical problems.

48

266.    Therefore, when an oral NSAID, such as cyclobenzaprine, is taken in conjunction with a topical NSAID, like diclofenac, there are certain health risks to the patient.

267.    McGee prescribed both oral and topical NSAIDs to the same patient without properly considering the potentially harmful effects.

268.    The Pharmacy Defendants dispensed to patients both the oral and topical NSAIDs without conducting a proper review to avoid therapeutic duplication presenting a risk to the health and safety of the claimants.

269.    An individual who is not a licensed pharmacist is not authorized to perform functions requiring professional judgment, including evaluating prescriptions for drug interactions and counseling patients. 8 N.Y.C.R.R. § 29.7(a)(21)(ii)(b)(1), (2), (6), (7).

270.    The Pharmacy Defendants' receipts do not identify who delivered the drug or medication to the patient.

271.    Upon information and belief, the Pharmacy Defendants' patients were not personally offered counseling on the issues raised by the prescriptions for both oral and topical NSAIDs, including therapeutic duplication, by a pharmacist or pharmacy intern over the phone or in person before the drugs and medications were delivered to the patients off of the Pharmacy Defendants' premises.

272.    In many instances, the delivery receipts purporting to confirm delivery of medications to claimants fail to document whether the claimant requested counseling.

273.    The receipt for the cyclobenzaprine HCL tab, diclofenac sodium 2% solution, and lidocaine 5% ointment purportedly delivered to claimant J.C. (claim no. 056715557) by In & Out Rx leaves pertinent portions of the receipt blank, including whether J.C. requested counseling, who delivered the medications, and at what time.

274.     A true and accurate copy of the delivery slip for claimant J.C. is depicted below:



275.     The receipt for the cyclobenzaprine HCL tab, diclofenac sodium 2% solution, and lidocaine 5% ointment purportedly delivered to claimant E.R. (claim no. 056351318) by New Lots Rx leaves pertinent portions of the receipt blank, including whether E.R. requested counseling, who delivered the medications, and at what time.

276.     A true and accurate copy of the delivery slip for claimant E.R. is depicted below:



277. The receipts for the cyclobenzaprine HCL tab, diclofenac sodium 2% solution, and lidocaine 5% ointment purportedly delivered to claimant A.B. (claim no. 055245033) by Total Med Rx leaves pertinent portions of the receipt blank, including whether A.B. requested counseling, who delivered the medications, and at what time.

278. True and accurate copies of the delivery slips for claimant A.B. is depicted below:



**TOTAL MED RX INC**
**214-85 JAMAICA AV**
**JAMAICA, NY 11428-1737**
Tel: 347-894-8011
Fax: 347-894-8025
Email: Totalmedrx@gmail.com

## DELIVERY RECEIPT

**Patient Name:** A___ B___ (Id: 1094)
**Address:**
**Phone:**

**D.O.A:** 10/20/2023
**Insurance Co:** Liberty Mutual Ins. Co.
**Claim#:** 055245033
**Policy#:** AOS221458195-40
**Policy Holder:** A___ B___

| | |
|---|---|
| 69420-1001-01 | Cyclobenzaprine HC 7.5 MG QTY: 90 |
| 51672-3008-05 | LIDOCAINE OINT 5% QTY: 250 |

I have received the equipment and medications listed above along with instructions on how to use it. I indicate that TOTAL MED RX INC cannot be held responsible for any inappropriate use of this equipment or medications.

Signature: _____

Date: 12/19/23



279.    The Defendants and McGee disregarded patient safety when prescribing, dispensing, and delivering duplicative and medically unnecessary topical medications with oral NSAIDs in furtherance of their scheme to prescribe and bill for as many drugs and medications as possible.

280.    The Defendants violated their duty to the Pharmacy Defendants' patients to identify risks posed by the therapeutic duplication of topical and oral NSAIDs and to provide an offer of appropriate counseling personally from a licensed pharmacist or pharmacy intern over the telephone or in person before the medications were delivered off of the Pharmacy Defendants' premises.

## VI.    SPECIFIC ALLEGATIONS OF MAIL FRAUD RACKETEERING ACTIVITY

281.    The Defendants (a) created, prepared, and submitted (or caused to be created, prepared, and submitted) false No-Fault claim reimbursement documentation, (b) intentionally violated the laws of the United States by devising and intending to devise, schemes to defraud and obtain money and property using false and fraudulent pretenses and representations, and (c) placed, or caused to be placed, in a post office and/or authorized depository for mail matter, things to be sent and delivered by the United States Postal Service, in violation of 18 U.S.C. § 1341 (mail fraud) to execute, or attempt, such fraudulent schemes.

282.    Unless otherwise pled to the contrary, all documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, letters of medical necessity, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and requests for payment in connection with the insurance claims referenced throughout this pleading (and accompanying exhibits) traveled through the U.S. Mail.

283.    Every automobile insurance claim detailed within this Complaint involved at least two uses of the U.S. Mail, including the mailing of, among other things, the notice of claim, initial policies, insurance payments, claim-related payments, and the return of the canceled payment instruments to the financial institution(s) from which the draft(s) were drawn.

### A.    BEACH MEDICAL REHABILITATION P.C. ("BEACH MEDICAL") ENTERPRISE

284.    In & Out Rx and Nisanov either personally used (or caused the use of) the U.S. Mail to further this fraudulent scheme by causing claimants' prescription records and treatment records, and/or invoices/bills from In & Out Rx and Nisanov to be mailed to Liberty Mutual (and/or counsel for claimants) or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

285.     Nisanov caused In & Out Rx to falsely certify that they were eligible to be reimbursed under New York's No-Fault Laws each time that McGee and/or In & Out Rx mailed (or was caused to mail) a demand for payment (i.e., invoice or bill) to Liberty Mutual.

286.     In & Out Rx participated in the Beach Medical enterprise by fulfilling the unlawful prescriptions.

287.     Nisanov's participation in the operation and management of the Beach Medical enterprise, which included, among other things, (a) owning In & Out Rx, (b) facilitating unlawful prescriptions between In & Out Rx and prescribers, (c) dispensing medically unnecessary and ineffective drugs and medications to In & Out Rx's patients, and (d) causing In & Out Rx to submit false and fraudulent No-Fault benefit claims to Liberty Mutual, rendered In & Out Rx completely ineligible for No-Fault reimbursement under New York law.

288.     As a result of the above-described conduct, Nisanov purposely caused Beach Medical and In & Out Rx to make a misrepresentation every time that Beach Medical and In & Out Rx mailed (or was caused to mail) a document to Liberty Mutual claiming eligibility for No-Fault reimbursement.

289.     Moreover, because (a) Nisanov engaged in (or caused) the above-described unlawful conduct through their participation in the operation and management of the Beach Medical enterprise, (b) Nisanov caused In & Out Rx to seek No-Fault reimbursement from Liberty Mutual (even though In & Out Rx were not lawfully entitled to such reimbursement), and (c) Beach Medical and In & Out Rx used (or were caused to use) the U.S. Mail to seek reimbursement, it is clear that Nisanov committed mail fraud.

290.     At all relevant times, Nisanov knew that In & Out Rx used (including its employees, owner(s), contractors, and agents), a customer, a claimant, an insurance carrier, a claimant's

attorney, other healthcare providers, or Liberty Mutual would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) Beach Medical and In & Out Rx.

291.    Liberty Mutual estimates that the unlawful operation of the Beach Medical enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 7 and incorporated herein by reference as if outlined in its entirety.

**B.    SOUTH BRONX MEDICAL REHABILITATION, P.C. ("SOUTH BRONX") ENTERPRISE**

292.    In & Out Rx, Total Med Rx, New Lots Rx, Nisanov, Abdurakhmanov, Mosheyev, and Kandinov either personally used (or caused the use of) the U.S. Mail to further this fraudulent scheme by causing claimants' prescription records and treatment records, and/or invoices/bills from In & Out Rx, Total Med Rx, New Lots Rx, Nisanov, Abdurakhmanov, Mosheyev, and Kandinov to be mailed to Liberty Mutual (and/or counsel for claimants) or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

293.    Nisanov, Abdurakhmanov, Mosheyev, and Kandinov caused In & Out Rx, Total Med Rx, and New Lots Rx to falsely certify that they were eligible to be reimbursed under New York's No-Fault Laws each time that McGee and/or In & Out Rx, Total Med Rx, and New Lots Rx mailed (or was caused to mail) a demand for payment (i.e., invoice or bill) to Liberty Mutual.

294.    In & Out Rx, Total Med Rx, and New Lots Rx participated in the South Bronx Medical enterprise by fulfilling the unlawful prescriptions.

295.    Nisanov, Abdurakhmanov, Mosheyev, and Kandinov's participation in the operation and management of the South Bronx Medical enterprise, which included, among other things, (a) owning In & Out Rx, Total Med Rx, and New Lots Rx, (b) facilitating unlawful

prescriptions between In & Out Rx, Total Med Rx, and New Lots Rx and prescribers, (c) dispensing medically unnecessary and ineffective drugs and medications to In & Out Rx, Total Med Rx, and New Lots Rx's patients, and (d) causing In & Out Rx, Total Med Rx, and New Lots Rx to submit false and fraudulent No-Fault benefit claims to Liberty Mutual, rendered In & Out Rx, Total Med Rx, and New Lots Rx completely ineligible for No-Fault reimbursement under New York law.

296.    As a result of the above-described conduct, Nisanov, Abdurakhmanov, Mosheyev, and Kandinov purposely caused South Bronx Medical, In & Out Rx, Total Med Rx, and New Lots Rx to make a misrepresentation every time that South Bronx Medical, In & Out Rx, Total Med Rx, and New Lots Rx mailed (or was caused to mail) a document to Liberty Mutual claiming eligibility for No-Fault reimbursement.

297.    Moreover, because (a) Nisanov, Abdurakhmanov, Mosheyev, and Kandinov engaged in (or caused) the above-described unlawful conduct through their participation in the operation and management of the South Bronx Medical enterprise, (b) Nisanov, Abdurakhmanov, Mosheyev, and Kandinov caused In & Out Rx, Total Med Rx, and New Lots Rx to seek No-Fault reimbursement from Liberty Mutual (even though In & Out Rx, Total Med Rx, and New Lots Rx were not lawfully entitled to such reimbursement), and (c) South Bronx Medical, In & Out Rx, Total Med Rx, and New Lots Rx used (or were caused to use) the U.S. Mail to seek reimbursement, it is clear that Nisanov, Abdurakhmanov, Mosheyev, and Kandinov committed mail fraud.

298.    At all relevant times, Nisanov, Abdurakhmanov, Mosheyev, and Kandinov knew that In & Out Rx, Total Med Rx, and New Lots Rx (including its employees, owner(s), contractors, and agents), a customer, a claimant, an insurance carrier, a claimant's attorney, other healthcare providers, or Liberty Mutual would use (or be caused to use) the U.S. Mail in connection with each

of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) South Bronx Medical, In & Out Rx, Total Med Rx, and New Lots Rx.

299.    Liberty Mutual estimates that the unlawful operation of the South Bronx Medical enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 7 and incorporated herein by reference as if outlined in its entirety.

## VII.    SPECIFIC ALLEGATIONS OF FRAUDULENT CONCEALMENT AND MATERIAL MISREPRESENTATIONS MADE TO AND RELIED UPON BY LIBERTY MUTUAL

### A.    FRAUDULENT CONCEALMENT—BEACH MEDICAL ENTERPRISE

300.    At all relevant times during the operation of the Beach Medical enterprise, Nisanov purposely caused In & Out Rx to falsely certify that they were eligible to be reimbursed under New York's No-Fault Laws to induce Liberty Mutual to promptly pay charges related to prescription drugs and other pharmacy services purportedly provided to Liberty Mutual claimants who were caused to be customers of In & Out Rx.

301.    At all relevant times, Nisanov and In & Out Rx directly participated in the operation and management of Beach Medical by directing unlawful referrals for prescriptions.

302.    Because Nisanov were responsible for causing In & Out Rx's (a) billing Liberty Mutual for drugs that were not medically necessary and were completely unjustified to treat the Liberty Mutual claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Liberty Mutual for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and/or (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish

prescriptions for medically unnecessary drugs that were to be filled by In & Out Rx, then In & Out Rx were caused to falsely claim eligibility for No-Fault reimbursement each and every time that In & Out Rx sought No-Fault reimbursement from Liberty Mutual.

303.    As alleged above, Nisanov caused In & Out Rx to create and submit to Liberty Mutual No-Fault claim reimbursement documents and demands for payment relative to prescription drugs and other pharmacy services that were (a) unlawful, (b) fraudulently reported, (c) completely unnecessary, (d) falsely charged, and/or (e) not actually provided as represented.

304.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

305.    Many of Nisanov and In & Out Rx's false, fraudulent, and unlawful acts are not readily evident within the documents submitted to Liberty Mutual by Nisanov and In & Out Rx and upon which Liberty Mutual relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

306.    Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services that were provided in accordance with all applicable New York state licensing requirements.

307.    Thus, every time that Nisanov caused In & Out Rx to submit No-Fault reimbursement demands to Liberty Mutual, Nisanov necessarily certified that In & Out Rx were eligible to be reimbursed under New York's No-Fault laws.

308.    The full extent of Nisanov's fraudulent and unlawful acts relative to their participation in the Beach Medical enterprise was not known to Liberty Mutual until shortly before it commenced this action.

**B.    FRAUDULENT CONCEALMENT—SOUTH BRONX MEDICAL ENTERPRISE**

309.    At all relevant times during the operation of the South Bronx Medical enterprise, Nisanov, Abdurakhmanov, Mosheyev, and Kandinov purposely caused In & Out Rx, Total Med Rx, and New Lots Rx to falsely certify that they were eligible to be reimbursed under New York's No-Fault Laws to induce Liberty Mutual to promptly pay charges related to prescription drugs and other pharmacy services purportedly provided to Liberty Mutual claimants who were caused to be customers of In & Out Rx, Total Med Rx, and New Lots Rx.

310.    At all relevant times, Nisanov, Abdurakhmanov, Mosheyev, Kandinov, In & Out Rx, Total Med Rx, and New Lots Rx directly participated in the operation and management of South Bronx Medical by directing unlawful referrals for prescriptions.

311.    Because Nisanov, Abdurakhmanov, Mosheyev, and Kandinov were responsible for causing In & Out Rx, Total Med Rx, and New Lots Rx's (a) billing Liberty Mutual for drugs that were not medically necessary and were completely unjustified to treat the Liberty Mutual claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Liberty Mutual for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and/or (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs that were to be filled by In & Out Rx, Total Med Rx, and New Lots Rx, then In & Out Rx, Total Med Rx, and New Lots Rx were caused to falsely claim eligibility for No-Fault reimbursement each and every time that In & Out Rx, Total Med Rx, and New Lots Rx sought No-Fault reimbursement from Liberty Mutual.

312.    As alleged above, Nisanov, Abdurakhmanov, Mosheyev, and Kandinov caused In & Out Rx, Total Med Rx, and New Lots Rx to create and submit to Liberty Mutual No-Fault claim reimbursement documents and demands for payment relative to prescription drugs and other pharmacy services that were (a) unlawful, (b) fraudulently reported, (c) completely unnecessary, (d) falsely charged, and/or (e) not actually provided as represented.

313.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

314.    Many of Nisanov, Abdurakhmanov, Mosheyev, Kandinov, In & Out Rx, Total Med Rx, and New Lots Rx's false, fraudulent, and unlawful acts are not readily evident within the documents submitted to Liberty Mutual by Nisanov, Abdurakhmanov, Mosheyev, Kandinov, In & Out Rx, Total Med Rx, and New Lots Rx and upon which Liberty Mutual relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

315.    Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services that were provided in accordance with all applicable New York state licensing requirements.

316.    Thus, every time that Nisanov, Abdurakhmanov, Mosheyev, and Kandinov caused In & Out Rx, Total Med Rx, and New Lots Rx to submit No-Fault reimbursement demands to Liberty Mutual, Nisanov, Abdurakhmanov, Mosheyev, and Kandinov necessarily certified that In & Out Rx, Total Med Rx, and New Lots Rx were eligible to be reimbursed under New York's No-Fault laws.

317.    The full extent of Nisanov, Abdurakhmanov, Mosheyev, and Kandinov's fraudulent and unlawful acts relative to their participation in the South Bronx Medical enterprise was not known to Liberty Mutual until shortly before it commenced this action.

## VIII.   LIBERTY MUTUAL'S JUSTIFIABLE RELIANCE

318.    Each claim submitted to Liberty Mutual by the Pharmacy Defendants was verified according to Insurance Law § 403.

319.    Nisanov, Abdurakhmanov, Mosheyev, and Kandinov, as owners of the Pharmacy Defendants, were responsible for the proper conduct of the Pharmacy Defendants in accordance with New York law.

320.    To induce Liberty Mutual to promptly pay the Pharmacy Defendants' patient invoices, the Defendants submitted (or caused to be submitted) to Liberty Mutual NF-3 bills certifying that the Pharmacy Defendants were eligible to be reimbursed under New York's No-Fault Laws.

321.    Further, to induce Liberty Mutual to promptly pay the fraudulent charges for prescription drug and other pharmacy services purportedly provided to Liberty Mutual claimants, the Defendants hired attorneys to pursue collection of the fraudulent charges from Liberty Mutual. These attorneys routinely file time-consuming and expensive lawsuits and arbitration matters against Liberty Mutual.

322.    Liberty Mutual is under statutory and contractual obligations to promptly and fairly process claims within 30 days.  The facially valid documents submitted to Liberty Mutual by (or on behalf of) the Pharmacy Defendants in support of the fraudulent charges at issue, combined with the material misrepresentations described above, were designed to, and did, cause Liberty Mutual to justifiably rely on them.

323.    The Defendants concealed from Liberty Mutual the truth regarding the Pharmacy Defendants' reimbursement eligibility under New York law.

324.    In reasonable reliance on these misrepresentations, Liberty Mutual paid money to the Pharmacy Defendants to its detriment.

325.    Liberty Mutual would not have paid these monies had the Defendants provided true and accurate information about the Pharmacy Defendants' reimbursement eligibility under New York law, including (a) the Pharmacy Defendants' No-Fault reimbursement eligibility under N.Y. Ins. Law § 5101, *et seq.*, and (b) the fact and necessity of the services purportedly provided to those Liberty Mutual claimants and customers of the Pharmacy Defendants eligible for insurance coverage under an automobile insurance policy issued by Liberty Mutual.

326.    As a result, Liberty Mutual was caused to pay the Pharmacy Defendants over $69,400.73 in reasonable reliance on the Pharmacy Defendants' false No-Fault claim reimbursement documentation and the Defendants' false representations regarding the Pharmacy Defendants' eligibility for reimbursement under New York's No-Fault Laws.

## IX.    DAMAGES

327.    The Defendants' pattern of fraudulent conduct injured Liberty Mutual in its business and property by reason of the aforesaid violations of state and federal law.  Although it is not necessary for Liberty Mutual to calculate damages with specificity at this stage in the litigation (whereas Liberty Mutual's damages continue to accrue), Liberty Mutual's injury includes, but is not limited to, compensatory damages for payments in connection with first-party claims in excess of $69,400.73, the exact amount to be determined at trial, including:

(a)    Payments made to In & Out Rx Inc. in connection with first-party claims in excess of $9,780.34, the exact amount to be determined at trial.  The chart annexed at Exhibit 4, and incorporated herein as if set forth in its entirety, identifies Liberty Mutual's payments to In & Out Rx Inc. in connection with first-party ("No-Fault") claims determined to be fraudulent as of the filing of this Complaint.

(b)    Payments made to Total Med Rx Inc. in connection with first-party claims in excess of $47,913.10, the exact amount to be determined at trial.  The chart annexed at

Exhibit 5, and incorporated herein as if set forth in its entirety, identifies Liberty Mutual's payments to Total Med Rx Inc. in connection with first-party ("No-Fault") claims determined to be fraudulent as of the filing of this Complaint.

(c)    Payments made to New Lots Rx Plus Corp. in connection with first-party claims in excess of $11,707.29, the exact amount to be determined at trial. The chart annexed at Exhibit 6, and incorporated herein as if set forth in its entirety, identifies Liberty Mutual's payments to New Lots Rx Plus Corp. in connection with first-party ("No-Fault") claims determined to be fraudulent as of the filing of this Complaint.

## X.    CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### BEACH MEDICAL REHABILITATION P.C. ENTERPRISE
### (Against In & Out Rx Inc. and Borik Nisanov)

328.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 327 as if set forth fully herein.

329.    In furtherance of their operation and management of Beach Medical Rehabilitation P.C. ("Beach Medical"), Defendants, In & Out Rx Inc. and Borik Nisanov (collectively, "Count I Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Liberty Mutual insurance claims in furtherance of this scheme to defraud.

330.    The Count I Defendants employed two or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 7.

331.    Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Liberty Mutual through the U.S. Mail.

332.    Policies of insurance were delivered to two or more Liberty Mutual claimants through the U.S. Mail.

333.    Payments made by Liberty Mutual to the Pharmacy Defendants and the Count I Defendants were delivered through the U.S. Mail.

334.    As documented above, the Count I Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Liberty Mutual related to Pain Products and other drugs dispensed and delivered by the Count I Defendants to collect payment from Liberty Mutual under the Personal Injury Protection benefits portion of the Liberty Mutual policies and applicable New York No-Fault laws.

335.    When the Count I Defendants mailed (or caused the mailing of) NF-3 forms and other claim-related documents to Liberty Mutual seeking No-Fault reimbursement, the Count I Defendants materially misrepresented the Pharmacy Defendants' No-Fault reimbursement eligibility under New York law.

336.    As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Liberty Mutual, by its agents and employees, issued drafts to the Pharmacy Defendants for the benefit of one or more of the Count I Defendants that would not otherwise have been paid.

337.    The Count I Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Liberty Mutual from discovering this scheme for a significant period, thus enabling the Count I Defendants to continue this scheme without being detected.

338.     The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

339.     The activities alleged in this case had the direct effect of causing funds to be transferred from Liberty Mutual to Beach Medical for the benefit of the Count I Defendants.

340.     Liberty Mutual is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Liberty Mutual's overall financial well-being and adversely affect insurance rates.

341.     Beach Medical constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

342.     The Count I Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

343.     Liberty Mutual is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count I Defendants' conduct.

344.     The Count I Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

345.     Because of the Count I Defendants' violations of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT II
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### BEACH MEDICAL REHABILITATION P.C. ENTERPRISE
### (Against In & Out Rx Inc. and Borik Nisanov)

346. Liberty Mutual re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 327 as if fully set forth herein.

347. Through their participation in the operation and management of Beach Medical Rehabilitation P.C. ("Beach Medical"), Defendants, In & Out Rx Inc. and Borik Nisanov (collectively, "Count II Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

348. The Count II Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of Beach Medical through a pattern of racketeering activity, including numerous acts of mail fraud as outlined in Exhibit 7, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Liberty Mutual.

349. The purpose of the conspiracy was to obtain No-Fault payments from Liberty Mutual on behalf of the Pharmacy Defendants, even though the Pharmacy Defendants, as a result of the Count II Defendants' unlawful conduct, were not eligible to collect such No-Fault payments.

350. The Count II Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

351. Liberty Mutual has been injured in its business and property because of this conspiratorial conduct whereas Liberty Mutual has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

352. Because of this violation of 18 U.S.C. § 1962(d), the Count II Defendants are jointly and severally liable to Liberty Mutual, and Liberty Mutual is entitled to recover from each of the

defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT III
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### SOUTH BRONX MEDICAL REHABILITATION, P.C. ENTERPRISE
### (Against In & Out Rx Inc., Total Med Rx Inc., New Lots Rx Plus Corp., Borik Nisanov, Jacob Abdurakhmanov, Michael Mosheyev, and Joshua Kandinov)

353.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 327 as if set forth fully herein.

354.    In furtherance of their operation and management of South Bronx Medical Rehabilitation, P.C. ("South Bronx Medical"), Defendants, In & Out Rx Inc., Total Med Rx Inc., New Lots Rx Plus Corp., Borik Nisanov, Jacob Abdurakhmanov, Michael Mosheyev, and Joshua Kandinov (collectively, "Count III Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Liberty Mutual insurance claims in furtherance of this scheme to defraud.

355.    The Count III Defendants employed two or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 7.

356.    Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Liberty Mutual through the U.S. Mail.

357.    Policies of insurance were delivered to two or more Liberty Mutual claimants through the U.S. Mail.

358.    Payments made by Liberty Mutual to the Pharmacy Defendants and the Count III Defendants were delivered through the U.S. Mail.

359.    As documented above, the Count III Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Liberty Mutual related to Pain Products and other drugs dispensed and delivered by the Count III Defendants to collect payment from Liberty Mutual under the Personal Injury Protection benefits portion of the Liberty Mutual policies and applicable New York No-Fault laws.

360.    When the Count III Defendants mailed (or caused the mailing of) NF-3 forms and other claim-related documents to Liberty Mutual seeking No-Fault reimbursement, the Count III Defendants materially misrepresented the Pharmacy Defendants' No-Fault reimbursement eligibility under New York law.

361.    As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Liberty Mutual, by its agents and employees, issued drafts to the Pharmacy Defendants for the benefit of one or more of the Count III Defendants that would not otherwise have been paid.

362.    The Count III Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Liberty Mutual from discovering this scheme for a significant period, thus enabling the Count III Defendants to continue this scheme without being detected.

363.    The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

364.    The activities alleged in this case had the direct effect of causing funds to be transferred from Liberty Mutual to South Bronx Medical for the benefit of the Count III Defendants.

365.    Liberty Mutual is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Liberty Mutual's overall financial well-being and adversely affect insurance rates.

366.    South Bronx Medical constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

367.    The Count III Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

368.    Liberty Mutual is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count III Defendants' conduct.

369.    The Count III Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

370.    Because of the Count III Defendants' violations of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT IV
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### SOUTH BRONX MEDICAL REHABILITATION, P.C. ENTERPRISE
**(Against In & Out Rx Inc., Total Med Rx Inc., New Lots Rx Plus Corp., Borik Nisanov, Jacob Abdurakhmanov, Michael Mosheyev, and Joshua Kandinov)**

371.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 327 as if fully set forth herein.

372.    Through their participation in the operation and management of South Bronx Medical Rehabilitation, P.C. ("South Bronx Medical"), Defendants, In & Out Rx Inc., Total Med Rx Inc., New Lots Rx Plus Corp., Borik Nisanov, Jacob Abdurakhmanov, Michael Mosheyev, and Joshua Kandinov (collectively, "Count IV Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

373.    The Count IV Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of South Bronx Medical through a pattern of racketeering activity, including numerous acts of mail fraud as outlined in Exhibit 7, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Liberty Mutual.

374.    The purpose of the conspiracy was to obtain No-Fault payments from Liberty Mutual on behalf of the Pharmacy Defendants, even though the Pharmacy Defendants, as a result of the Count IV Defendants' unlawful conduct, were not eligible to collect such No-Fault payments.

375.    The Count IV Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

376.    Liberty Mutual has been injured in its business and property because of this conspiratorial conduct whereas Liberty Mutual has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

377.    Because of this violation of 18 U.S.C. § 1962(d), the Count IV Defendants are jointly and severally liable to Liberty Mutual, and Liberty Mutual is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT V
### COMMON LAW FRAUD
### (Against All Defendants)

378.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 327 as if fully set forth herein.

379.    The Defendants schemed to defraud Liberty Mutual by, among other things, (a) billing Liberty Mutual for drugs that were not medically necessary and were completely unjustified to treat the Liberty Mutual claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Liberty Mutual for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and/or (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs that were to be filled by In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp.

380.    The Defendants' scheme to defraud Liberty Mutual was dependent upon a succession of material misrepresentations of fact related to In & Out Rx Inc., Total Med Rx Inc.,

and New Lots Rx Plus Corp.'s eligibility for and entitlement to No-Fault reimbursement under New York law.

381.    The misrepresentations of fact by the Defendants included, but were not limited to, material misrepresentations of fact made in In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp.'s NF-3 forms, prescription forms, patient treatment records, delivery receipts, health insurance claim forms, other No-Fault claim reimbursement documents, letters, and/or payment requests.

382.    The Defendants' representations were false or required disclosure of additional facts to render the documents, information, and materials furnished not misleading.

383.    The misrepresentations were intentionally made by the Defendants in furtherance of their scheme to defraud Liberty Mutual by submitting claims on behalf of In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp. demanding payment of No-Fault insurance benefits.

384.    The Defendants knew that the representations contained in the No-Fault claim reimbursement documentation relating to Liberty Mutual claimants were false, and were made to induce Liberty Mutual to make payments for claims that were not legitimate or lawfully compensable.

385.    Liberty Mutual reasonably relied, to its detriment, upon the Defendants' material misrepresentations concerning In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp.'s eligibility to receive No-Fault reimbursement in paying numerous bills for prescription drugs and other pharmacy expenses according to New York's No-Fault insurance laws.

386.    Liberty Mutual's damages include, but are not necessarily limited to, No-Fault monies paid to In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp.—totaling more

than $69,400.73—for prescription drug and other pharmacy expenses and services rendered to Liberty Mutual claimants, even though In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp., were, at all relevant times, ineligible to receive No-Fault reimbursement under New York law.

## COUNT VI
### UNJUST ENRICHMENT
#### (Against All Defendants)

387.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 327 as if fully set forth herein.

388.    As alleged herein, the Defendants, through various means, conspired to induce Liberty Mutual to make numerous and substantial payments to In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp. in connection with claims made under New York's No-Fault Laws.

389.    When Liberty Mutual paid In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp., Liberty Mutual reasonably believed that it was legally obligated to make such payments based upon the misrepresentations and omissions that the Defendants, or those persons working under their control, made (or were caused to make) concerning In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp.'s reimbursement eligibility under New York's No-Fault Laws.

390.    Every No-Fault reimbursement payment that Liberty Mutual was caused to make to (or for the benefit of) In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp. during this scheme constitutes a benefit that the Defendants aggressively caused In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp. to seek and voluntarily accept.

391.    Throughout their scheme, the Defendants caused In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp.to wrongfully obtain a multitude of payments from Liberty Mutual—totaling over $69,400.73—as a direct and proximate result of the unlawful conduct detailed throughout this Complaint.

392.    Under New York law, the Defendants had no legal right to seek, collect, or retain assigned No-Fault benefit payments made by Liberty Mutual in connection with claims submitted by (or on behalf of) the Defendants because In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp. (a) billed Liberty Mutual for drugs that were not medically necessary and were completely unjustified to treat the Liberty Mutual claimants' purported injuries, (b) falsely charged for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charged Liberty Mutual for drugs at grossly excessive rates, (d) dispensed drugs and medications in violation of applicable regulatory and licensing requirements, and/or (e) maintained unlawful relationships with prescribers and induced them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs that were to be filled by In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp.

393.    As a direct and proximate result of this unlawful conduct relating to the billing for fraudulent, unnecessary, and ineffective drugs with respect to Liberty Mutual claimants, at no point were In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp. ever eligible for reimbursement under New York's No-Fault Laws.

394.    Throughout this scheme, the Defendants obtained substantial monetary benefits as the result of their unlawful conduct, benefits that were derived, in part, directly from the No-Fault reimbursement payments that Liberty Mutual was wrongfully induced to make to In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp.

395.    Retention of those benefits by any of the Defendants would violate fundamental principles of justice, equity, and good conscience.

<u>COUNT VII</u><br>
<strong>DECLARATORY RELIEF UNDER 28 U.S.C. § 2201</strong><br>
<strong>(Against In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp.)</strong>

396.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 327 as if set forth fully herein.

397.    To be eligible to receive assigned No-Fault benefits, an assignee provider of healthcare services, including providers of pharmacy services, must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

398.    In view of its (a) billing Liberty Mutual for drugs that were not medically necessary and were completely unjustified as a means of treating the Liberty Mutual claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Liberty Mutual for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs that were to be filled by In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp. were, at all relevant times, completely ineligible for No-Fault reimbursement under New York law, and thus has no standing to submit or receive assigned No-Fault benefits.

399.    In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp. continue to submit assigned No-Fault claims to Liberty Mutual demanding payment, and other assigned No-Fault claims remain pending with Liberty Mutual.

400.    In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp. continue to challenge Liberty Mutual's prior claim denials.

401.    In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp. continue to commence legal action, including arbitrations filed with the American Arbitration Association, against Liberty Mutual seeking payment of No-Fault benefits allegedly due and owing.

402.    A justifiable controversy exists between Liberty Mutual and In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp. because In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp. reject Liberty Mutual's ability to deny such claims.

403.    Liberty Mutual has no adequate remedy at law.

404.    In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp. also will continue to bill Liberty Mutual for No-Fault Benefit payments absent a declaration by this Court that its activities are unlawful, and that Liberty Mutual has no obligation to pay the pending, previously denied, and/or future No-Fault claims submitted by In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp.

405.    Accordingly, Liberty Mutual requests a judgment according to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that (a) that In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp. have no standing to seek, collect, or retain any payments made by Liberty Mutual in connection with assigned No-Fault benefits, and (b) that Liberty Mutual has no legal obligation to make any payment on any unpaid or otherwise pending bills that have been submitted to Liberty Mutual by, or on behalf of, In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp.

XI.    **DEMAND FOR RELIEF**

WHEREFORE, plaintiffs, LM General Insurance Company, American States Insurance Company, Liberty Mutual Personal Insurance Company, and LM Insurance Corporation (collectively, "Liberty Mutual"), respectfully pray that judgment enter in their favor, as follows:

**COUNT I**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**BEACH MEDICAL REHABILITATION P.C. ENTERPRISE**
**(Against In & Out Rx Inc. and Borik Nisanov)**

(a)  AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b)  AWARD Liberty Mutual's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

(c)  GRANT injunctive relief enjoining the Count I Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)  GRANT all other relief this Court deems just.

**COUNT II**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**BEACH MEDICAL REHABILITATION P.C. ENTERPRISE**
**(Against In & Out Rx Inc. and Borik Nisanov)**

(a)  AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b)  AWARD Liberty Mutual's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

(c)  GRANT injunctive relief enjoining the Count II Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)  GRANT all other relief this Court deems just.

## COUNT III
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### SOUTH BRONX MEDICAL REHABILITATION, P.C. ENTERPRISE
**(Against In & Out Rx Inc., Total Med Rx Inc., New Lots Rx Plus Corp., Borik Nisanov, Jacob Abdurakhmanov, Michael Mosheyev, and Joshua Kandinov)**

(a) AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b) AWARD Liberty Mutual's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

(c) GRANT injunctive relief enjoining the Count III Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT IV
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### SOUTH BRONX MEDICAL REHABILITATION, P.C. ENTERPRISE
**(Against In & Out Rx Inc., Total Med Rx Inc., New Lots Rx Plus Corp., Borik Nisanov, Jacob Abdurakhmanov, Michael Mosheyev, and Joshua Kandinov)**

(a) AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b) AWARD Liberty Mutual's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

(c) GRANT injunctive relief enjoining the Count IV Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT V
### COMMON LAW FRAUD
**(Against All Defendants)**

(a) AWARD Liberty Mutual's actual damages in an amount to be determined at trial;

(b) AWARD Liberty Mutual its costs, including, but not limited to, investigative costs incurred in the detection of the Defendants' illegal conduct;

(c) AWARD Liberty Mutual its costs in defending No-Fault collection suits filed by In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp. seeking payment of false and fraudulent invoices; and

(d) GRANT any other relief this Court deems just.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

(a) AWARD Liberty Mutual's actual and consequential damages to be determined at trial; and

(b) GRANT any other relief this Court deems just.

**COUNT VII**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp.)**

(a) DECLARE that In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp., at all relevant times, were caused to be operated in violation of one or more state licensing requirements applicable to pharmacies, thus rendering In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp. completely ineligible to seek or receive reimbursement under New York's No-Fault laws;

(b) DECLARE that In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp.'s activities are unlawful;

(c) DECLARE that Liberty Mutual has no obligation to pay any pending, previously-denied, and/or future No-Fault insurance claims submitted by In & Out Rx Inc., Total Med Rx Inc., and New Lots Rx Plus Corp.; and

(d) GRANT all other relief this Court deems just and appropriate.

**JURY TRIAL DEMAND**

The plaintiffs demand a trial by jury on all claims.

KING, TILDEN, MCETTRICK & BRINK, P.C.,

*/s/ Shauna L. Sullivan*
_____

Nathan A. Tilden (NT0571)
ntilden@ktmpc.com
Shauna L. Sullivan (SS5624)
ssullivan@ktmpc.com
350 Granite St, Ste 2204
Braintree, MA 02184
(617) 770-2214

Attorneys for the Plaintiffs,
*LM General Insurance Company,*
*American States Insurance Company,*
*Liberty Mutual Personal Insurance Company, and*
*LM Insurance Corporation*

Dated: October 24, 2024